263 So.2d 16

STATE of Louisiana

v.

Carroll DOBARD and Vincent Bush, Jr.

No. 51498.

June 5, 1972.

James David McNeill, Norman A. Pettingill, New Orleans, for defendants-appellants.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

HAMLIN, Justice.

Defendants appeal from their convictions of the offense of possession of heroin and their sentences to serve three years in the Louisiana State Penitentiary. Four bills of exceptions reserved during the course of trial are presented for our consideration.

Briefly, the facts of record disclose that on October 25, 1970 members of the New Orleans Police Department received a criminal trespass complaint for 1507 North Robertson Street, New Orleans, Louisiana, and on arrival at the location, they found the door to Apt. 104 ajar. In plain view were the two defendants as well as Clarence Baptiste, who was severed during the instant trial. A handkerchief was tied around the upper arm of Carroll Dobard; Bush had his back to the door and was performing some activity on a counter situated in the apartment. The officers, suspecting narcotics, entered the apartment and found on the counter a bottle cap, warm to the touch, filled with some sort of liquid; they also found on the counter top an eye dropper with a disposable attached needle and a disposable syringe with an attached needle. The defendants were arrested, and the narcotics paraphernalia was seized; defendants were thereafter charged with the crime for which they have been found guilty.

BILL OF EXCEPTIONS NO. 1

Bill of Exceptions No. 1 was reserved when the trial judge overruled defense counsel's objection to the introduction of any evidence during trial pertaining to events which happened at any place other than 1507 North Rampart Street, New Orleans, Louisiana.

In his opening statement, the District Attorney stated:

"The facts will show that on October 25, 1970 at approximately 10:45 AM Officers of the Fifth District had occasion to be at 1507 North Rampart Street, City of New Orleans, an abandoned apartment. * * *"

At the beginning of trial, the State questioned Ptn. Manuel Mackles as to whether he had occasion to be at 1507 North Robertson Street on October 25, 1970; thereafter, defense counsel objected to the officer's giving testimony with respect to events which happened at the Robertson

Street address, contending that the District Attorney restricted himself in his opening statement, supra, to events which might have happened at 1507 North Rampart Street. The officer, as well as other officers, testified at length after the trial judge overruled defense counsel's objection.

 Counsel for the defendants argue herein that the defendants were prejudiced by the officers' testimony as to events taking place at the Robertson Street apartment; it is submitted: " * * * The test is whether prejudice was done the defendants. To say, as the trial judge does in his per curiam, that no prejudice was done the defendants in the present case is pure speculation, since we know the defendants were convicted. It is just as likely that the jury in taking note of two addresses, 1507 North Rampart and 1507 North Robertson, could have concluded that offenses had taken place at both addresses, which would have been a highly prejudicial conclusion. * * * In its per curiam the court says the district attorney inadvertently made a mistake. * * * It is admitted that by the same logic a confession could be admitted although the district attorney might have inadvertently made a mistake in not mentioning the confession in his opening statement."

Article 766 of the Code of Criminal Procedure provides:

"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."

Article 769 of the Code of Criminal Procedure further provides:

"Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence.

"If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense."

In State v. Himel, 260 La. 949, 257 So.2d 670, 674 (1972), we said: "After a thorough study of the purpose of the opening statement at common law and under statutes of other states, and after research and study of the origin and development of our present codal provision and the Louisiana jurisprudence, we are of the opinion that the office of the opening statement is primarily to program the jury so that it may better follow and understand the evidence as it unfolds during the trial. See 3 La.L. Rev. 238; 14 La.L.Rev. 29." In State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971), we held that the opening statement has no probative force, and it is designed to inform and protect from surprise. Explaining the requirements of the opening state-

ment, we said in State v. Dillon, 260 La. 215, 255 So.2d 745 (1971), "However, by its opening statement, the State is only required to explain 'the *nature* of the charge, and [to] set forth, in general terms, the *nature* of the evidence by which the state expects to prove the charge.' La.C.Cr.P. Art. 766. * * * The district attorney's opening statement is designed only to afford the jury a general acquaintance with the case to enable it to understand the testimony to be introduced. State v. Kreller, 255 La. 982, 233 So.2d 906 (1970)."

Under the above articles of the Code of Criminal Procedure and jurisprudence, we do not find that the inadvertence of the District Attorney is cause for reversible error. The inadvertence did not take defense counsel by such surprise as to prevent their properly and efficiently conducting defendants' defense. The opening statement was followed closely by the testimony of the police officers which placed the commission of the instant offense at the Robertson Street address; at this time, the mistake was corrected.

A reading of the testimony of record discloses that defendants suffered no prejudice. We find that the trial judge was correct in overruling defense counsel's objection. His per curiam recites in part:

"In applying Art. 766 of the Code of Criminal Procedure I was of the opinion that the District Attorney inadvertently substituted the name 'Rampart', when he meant 'Robertson' in referring to the address of the crime and that he, in fact, had acted in good faith.

"I further failed to find that this matter either took the defense by surprise or prejudiced them in the defense of their case. It should be pointed out that neither defense counsel claimed surprise or prejudice at the time of making the objection to testimony regarding 1507 North Robertson Street.

"Defense counsel in stating his reason for objecting was that the District Attorney had restricted himself in his opening statement to the facts he said he would try to establish. This Court felt that inasmuch as the opening statement of the State is to explain the nature of the charge and set forth in general terms the nature of the evidence by which the State expects to prove the said charge, it was mentioned by the District Attorney in his opening statement that the address of 1507 North Rampart Street was in the City of New Orleans. The transcript of the testimony is that the offense occurred within the jurisdiction of the Criminal District Court for the Parish of Orleans, namely: that it occurred in the City of New Orleans. Therefore, this Court in finding that the opening statement by the State properly outlined the nature of the case and the proof to be submitted and that the matter complained of and objected to in Bill of Exception No. 1, neither prejudiced nor

surprised the defense to such an extent that would have warranted this Court sustaining the said objection."

Bill of Exceptions No. 1 is without merit.

## BILL OF EXCEPTIONS NO. 2

Bill of Exceptions No. 2 was reserved when the trial court overruled defense counsel's objection to the introduction in evidence of S–2, a bottle cap. (This was the cap described supra; it was found on the counter top.)

■ Defense counsel moved to suppress the introduction of the bottle cap on the grounds that there was no evidence establishing the ownership of the cap; that there was no evidence establishing that either defendant owned the cap; and that there was no evidence showing that the cap had ever been in the possession of either defendant or that it was found in either defendant's possession.

The trial judge did not agree with the above averments and gives his reasons in his per curiam which recites in part:

"My overruling of this objection, as it relates to the defendants never possessing the said evidence, was based on the fact that Statutes of the State of Louisiana and jurisprudence regarding narcotic violations make it clear that the offense of possession of narcotics include actual possession, constructive possession, or control of a narcotic drug. * * * Based upon this factual situation [the facts recited supra] I overruled defense counsel's objection and at the conclusion of the trial charged the jury accordingly:

" 'Possession may be of two kinds, actual or constructive. Actual or physical possession connotes the idea of having in hand or on one's person, constructive possession is synonymous with the phrase of having in one's control, the dominion over, the right to dispose of, having lawful title to, although the physical possession might be in another's possession or at some other place. The term "under control of" applies to the cases wherein the person does not have actual possession, but the article or substance is some place where he placed it, or left it, or where it remains at his pleasure or at his disposition or in his domain. The word "control" means power or authority to control, the substance or article is some place where it is in the authority or power of the person to control. The substance is there at his will, or disposition, and he make [may] take actual physical possession of it at any time he chooses. In the case at the bar the State must show to your entire satisfaction and beyond a reasonable doubt the narcotic was in the physical possession of the defendants or that although not on his or their person(s) it may have been handled by one of the defendants or someone acting in their behalf and with the control, knowl-

edge, and consent and that the same subject had under his control and disposal. To bring the defendant within the Statute of possession it must be unlawful, that is to say it must have been possessed knowingly. Even though one might physically and constructively possess a narcotic drug if he had no knowledge of this possession he could not be held accountable for this possession.' "

Counsel for the defendants submit herein:

"The bottle cap and none of the evidence offered by the state was found on either of the defendants * * * Nor was there any evidence to show con[s]tructive possession. The apartment was a vacant, abandoned apartment, * * * and the defendants were being charged with being trespassers. * * * Constructive possession could therefore not be inferred from any ownership or control of the premises.

"There was no fingerprint or other evidence to show that they had handled the bottle cap or that they had previously had any physical possession which would continue as constructive possession if they put it down. On the contrary, the testimony of the police expert on track marks showed that neither defendant had any track marks of any immediate recency that would have connected them with the bottle cap. * * *

"The state's theory is that they were getting ready to inject themselves with a 'fix'.

* * * Assuming this to be true, the most that could be said is that they were in the vicinity of what was later identified as heroin, preparing to possess it by injecting themselves. This in itself is not a crime and is not what they are charged with. Nor is it constructive possession or evidence of constructive possession, any more than the hungry man in front of the restaurant is in constructive possession of the piece of pie in the window.

"The evidence was obtained under circumstances that did not connect it with defendants. The officers came to the apartment to investigate an alleged complaint of trespass. They admittedly had no search warrant and needed none for the purpose of their intended investigation. And seizure of evidence of a totally unrelated offense could admittedly be justified as part of this investigation. But the arrest of defendants on a charge of trespass could not of itself connect them with items seized as an incident to their arrest, not on their person, but in the vacant, abandoned apartment in which they are accused of being trespassers. Probable cause is given by the trial judge in his per curium as another reason for admitting the evidence. * * * But the most the evidence showed was that the defendants were in the vicinity of the heroin probably preparing to take possession of it by injecting themselves. But such preparation does not constitute

·even attempt. Art. 27, Code of Criminal Procedure."

In State v. Smith, 257 La. 1109, 245 So. 2d 327 (1971), we held: "A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the ·other the right to control of it." See, State v. Andry, 260 La. 79, 255 So.2d 81 (1971).

This matter was tried to a jury, and that body determined that the defendants had possession of the heroin herein involved. We find that the trial judge's charge to the jury, supra, was proper, and that he ·clearly and correctly stated the law and jurisprudence as above set forth. Under such circumstances, no reversible error was ·committed.

Bill of Exceptions No. 2 is without merit.

BILL OF EXCEPTIONS NO. 3

Bill of Exceptions No. 3 was reserved when the trial court overruled defense ·counsel's objection to the offering in evi- ·dence of S–2, a bottle cap and the same ·evidence objected to in Bill of Exceptions No. 2.

Counsel objected to the offering of the evidence on the ground that the cap was not in the same condition when it was turned over to the chemist for the Orleans Parish Crime Laboratory for examination as it was when it was found on the counter of the abandoned apartment by the arresting officers. They urged that when the cap was found by the officers it was half full of liquid, and that when it was turned over to the chemist, it was bone dry with microscopic particles—not visible to the naked eye. (The cap did not contain liquid when it was offered in evidence.)

Herein, counsel submit that the evidence should have been excluded since it lacked the necessary foundation; they further submit that the evidence should be deemed immaterial and without connexity. State v. Foret, 196 La. 675, 200 So. 1. Counsel argue:

"The bottle cap when picked up at 1507 North Robertson contained a milky fluid * * * It did not contain any liquid when it was turned over [to] the chemist * * * The explanation given was that evaporation had taken place, * ' * * and that there was no technique to prevent such a situation * * * The judge in his per curiam states that he was satisfied that the bottle cap (s–2) was not tampered with 'to any extent that would lead me to believe that any materials were added to the bottle cap' * * * However, since the way in which it was handled made it impossible to prevent evaporation or loss of the liquid, it is not reasonable to sup-

pose that the same method of handling would not prevent contamination. Certainly the circumstances created enough reasonable doubt to justify excluding the bottle cap."

The case of State v. Foret, supra, is not apposite; in that case a conviction was reversed because of the prejudice resulting from introduction into evidence of a physical object never connected with the crime. "Connexity is a matter for the jury to decide, so long as the objects introduced are shown to the satisfaction of the trial judge to have some relevance, i. e., some logical or rational connection with fact sought to be proved." State v. Dillon, 260 La. 215, 255 So.2d 745, 747 (1971). See, State v. Bland, 260 La. 153, 255 So.2d 723 (1971); State v. Wright, 254 La. 521, 225 So.2d 201 (1969).

We find that the trial judge correctly overruled counsel's objection to the introduction of the bottle cap in evidence and agree with his reasoning set forth in his per curiam which recites:

"My reason for overruling the defense's objection in this Bill of Exception was based on the testimony obtained from the chemist of the New Orleans Police Department. The testimony of the chemist revealed that when he examined and tested the bottle cap he found a residue of heroin. I was completely satisfied from the testimony presented that the particular exhibit S-2 was not tampered with to any extent

that would have led me to believe that any materials were added to the bottle cap other than that what was already there in the bottle cap at the time of the seizure of the police officers at the scene."

Bill of Exceptions No. 3 is without merit.

BILL OF EXCEPTIONS NO. 4

Bill of Exceptions No. 4 was reserved when the trial court overruled defense counsel's objection to the offering in evidence of S-2 (bottle cap), S-3 (eye dropper), S-4 (plastic disposable syringe), S-5 (needle), and S-6 (needle).

Counsel contended that the evidence had been illegally obtained; that the evidence had not been seized pursuant to any search warrant for the premises on which it was found; that it had not been found on the person of the defendants; and that it had not been seized as an incident to the lawful arrest of defendants.

Herein, defense counsel contend that the police officers entered the abandoned apartment without a search warrant and without an arrest warrant, and therefore the arrest of the defendants and subsequent search of the apartment were illegal and the evidence should have been suppressed and excluded. They argue:

"The central issue in any case of illegal possession is the admissibility of the evidence which is the subject of the alleged possession. The fact or facts to be de-

duced from the evidence admitted by the court is the province of the jury. State v. Matassa, 222 La. 363, 62 So.(2d) 609. The admissibility of the evidence and its relevance is a question of law for the court to determine. * * * State v. Gaines, 223 La. 711, 66 So.(2d) 618. Usually the fact to be determined from such evidence is a foregone conclusion. The outcome of the trial therefore hinges almost entirely on whether the evidence is admitted.

"In the present case counsel objected to the evidence for three reasons: (1) the bottle cap in which the heroin was identified by the chemist contained a milky fluid when it was picked up at 1507 North Robertson, but was dry when turned over to the chemist; (2) the bottle cap and other items (syringe, needle, etc.) were not found on the defendants and no evidence was introduced by the state that would link these items with the defendants at the time of their arrest or previously; and (3) the evidence was obtained under circumstances that made it inadmissible against the defendants."

We find that the above evidence was relevant, and that it was legally seized. We adopt as our reasons those of the trial judge set forth in his per curiam which recites:

"The fact situation established by the testimony reflects that members of the New Orleans Police Department received a complaint of criminal trespass being committed at 1507 North Robertson Street in the City of New Orleans. Upon arriving at the location the police officers were directed to apartment 104. The front door was ajar sufficiently in order that the police officers could view three subjects in the vacant apartment. One defendant, Carroll Dobard, had a handkerchief tied around the biceps of his upper arm, a second defendant, Vincent Bush, Jr., had his back to the door performing some activity on the counter and the third defendant not on trial here, Clarence Baptiste, was leaning against the wall. The police officers testified that from what they viewed at the time they approached the door of apartment 104 led them to believe that the three subjects therein, besides committing a criminal trespass, were in the process of administering narcotics to themselves. Accordingly, from the evidence, this Court found that a factual situation established that the three defendants were committing a crime of criminal trespass and, therefore, the arrest by the police officers was lawful. Therefore, the seizure of the evidence was incidental to the lawful arrest of the defendants for the crime of criminal trespass. Further, from the evidence, this Court finds that the police officers had probable cause to arrest the defendants for possession of narcotics. Therefore there was certainly no need for a search warrant for the premises from which the evidence

was seized under the factual situation of this case.

"Defense counsel in objecting and reserving a Bill of Exception No. 4, also objected to the introduction of all of the evidence on the ground it had not been found on the person of the defendants. My ruling regarding this aspect is covered in my Per Curiam to Bill of Exception No. 2, [supra] and I adopt same as applies to this particular aspect."

Bill of Exceptions No. 4 is without merit.

For the reasons assigned, the convictions and sentences are affirmed.

SUMMERS, J., concurs in the result.