292 So.2d 499 (1974)
STATE of Louisiana, Appellee,
v.
George WITHERSPOON, alias Johnny Lavelle, et al., Appellants.
No. 54047.
Supreme Court of Louisiana.
March 25, 1974.
Rehearing Denied April 26, 1974.
*501 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Charles R. Lindsay, Asst. Dist. Atty., for plaintiff-appellee.
James E. Franklin, Jr., Harry D. Simmons, Eugene J. Coen, Shreveport, for defendant-appellant.
TATE, Justice.
The three defendants were convicted of armed robbery and sentenced respectively to 75 years (Witherspoon), 25 years (Clark), and 7½ years (Owens) at hard labor. On appeal, the defendants rely upon 26 bills of exceptions.[1]
*502 Facts
The state relies upon evidence to the following effect:
Tom Chipman, operating the Pizza Hut restaurant, was robbed at about 11:00 P.M. Prior to the robbery, Chipman saw come to his doorway a green Pontiac with a dent on the right front fender. Two black men alighted, and the automobile drove off. The two men entered the restaurant and then committed the robbery.
In the meantime, Police Officer Perdue noticed a Pontiac, lights off and motor running, parked in front of an office building about two blocks away from the Pizza Hut. The only occupant of the automobile was the defendant Owens. Officer Perdue questioned him (suspecting an attempt to burglarize the office building), got his name, noted his vehicle license number and the presence of two hats in the rear seat, but permitted Owens to go. (Owens told him he had battery trouble, and the officer directed him to a service station.) Owens drove off.
The two robbers came out of the building. They were next seen at a shopping center about a mile away attempting to steal one vehicle by armed robbery, then (being unable to start the first) another. At this time, the police drove into the parking lot; a gun battle ensued, resulting in two charges of attempted murder because of the two policemen there wounded.

Bills Relating to the Defendant Owens Alone
The most serious issue of the appeal concerns whether admissible against Owens is this testimony as to these two later attempted robberies and the gun battle, both involving Witherspoon and Clark alone. Before these later two attempted robberies and the gun battle about a mile away from the Pizza Hut, Owens himself had been arrested and was in the custody of the police.
Under the evidence, Owens was as much a principal in the robbery as were Witherspoon and Clark. La.R.S. 14:24. Also, all three were involved in a criminal conspiracy to commit the robbery, i. e., an "agreement or combination of two or more persons for the specific purpose of committing any crime." La.R.S. 14:26.
Even though Owens, driving the getaway car, was two blocks away when the robbery was committed, evidence concerning it was admissible against him, both as a principal and as coconspirator. As provided by La.R.S. 15:455, "Each conspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby * * *." (Italics ours.)
Nevertheless, the crime to which Owens was a principal involved only the armed robbery at the Pizza Hut and the planned escape in his Pontiac. Likewise, this was the only crime for which the criminal conspiracy was entered into. Therefore, considering that the planned crime and conspiracy was to this effect, it is at least arguable that the subsequent attempted robberies and the subsequent shootings by his confederates were not, at least after Owens's arrest, in furtherance of any conspiracy or crime to which he was any longer a party. State v. Taylor, 173 La. 1010, 139 So. 463 (1932); State v. Johnson, 47 La.Ann. 1225, 17 So. 789 (1895). See Comment, "Conspiracy", 28 La.L.Rev. 534, 542-43 (1968).
Nevertheless, even if not admissible against Owens as in furtherance of a conspiracy or crime to which he was a party, the evidence is, under the present facts, admissible as part of the res gestae, La.R.S. 15:447, 15:448, of the crime of which he was a principal. The incidents of the flight occurred within minutes of the robbery and as a direct consequence, being an attempt to escape from the area.
The circumstances of the attempted robberies by Owens's confederates of the automobiles *503 and of the shootings in connection therewith are thus part of the res gestae of the Pizza Hut robbery, since they are "necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." La.R.S. 15:448. They are part of his confederates' desperate attempt to make an escape when, for the reasons shown, Owens's own getaway car had left the scene.
This is especially true, in view of the circumstances' relevancy as tending to corroborate (by tending to indicate the confederates had been deprived of other means of escape planned) the circumstantial showing that Owens was a principal in the crime, i. e., the driver of the planned getaway car. Owens had brought the confederates to the scene and, until forced to leave by the policeman, was parked nearby the scene of the robbery with motor running.
We therefore find no error in the trial court's refusal to order the severance of Owens's trial from that of the other defendants (Bill No. 2), nor in its failure to limit the evidence (Bill No. 5) so as to exclude (at least as against Owens) testimony as to the shootings and the attempted robberies by Witherspoon and Clark.
We further find no merit to Owens's motion to suppress evidence (Bill Nos. 3 and 4) seized at the time of his arrest. The facts recited show that, on the basis of information furnished him, the arresting officer had probable cause to arrest Owens, as the latter returned to the vicinity of the Pizza Hut (apparently for the purpose of finding Witherspoon and Clark). State v. Wood, 262 La. 259, 263 So.2d 28 (1973). He was the driver of the car previously parked nearby and identified as such by make, color, and license. The clothing and items seized from Owens's person were the result of a search incident to a lawful arrest, Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), while the hats in the car were in plain view following the lawful detention, State v. Jefferson, 284 So.2d 882 (La. 1973). See also Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Bills Relating to All Defendants
The errors urged by the other bills may be disposed of briefly:
1. A male defendant cannot complain of the effective exclusion of women from jury service in Louisiana, or at least our state jurisprudence so holds. State v. Womack, 283 So.2d 708 (La.1973). (Owens Bill No. 1, adopted by all defendants.)
2. In the absence of a collusive material injury to the accused (and none is shown here), the trial court does not abuse its reasonable discretion by excusing members of the petit jury venire in advance of the trial. La.C.Cr.P. art. 783, see Official Revision Comment (b); State v. Williams, 258 La. 801, 248 So.2d 295 (1971); State v. Jugger, 217 La. 687, 47 So.2d 46 (1950). Further, although the trial court may attach absent veniremen, Article 783, it is not required to delay proceedings to do so, in the absence of material prejudice to the accused (and none is shown here). State v. Dallao, 187 La. 392, 175 So. 4 (1937). (Witherspoon and Clark Bill Nos. 1-9).
3. We find no error in the trial court's refusal to sustain a challenge for cause to the juror Harrist. (Witherspoon and Clark Bill No. 10.) Initially the prospective juror displayed some uncertainty as to the defenses of intoxication and insanity. However, after being instructed and further interrogated by the court, he seemed to understand the instruction, and he stated that he could apply the law as given to him by the court. State v. Leichman, 286 So.2d 649 (La.1973). Likewise, no error is shown in the trial court's failure to excuse prospective juror Hawkins for cause based on his possible distraction by worry over absence from his business. (Owens Bill No. 17.)
*504 4. The photographs of the wounded police officers were probably inadmissible (Bill Nos. 11 and 12), for no substantial reason is advanced for their relevance. However, the photographs are not gruesome or unduly prejudicial. Since other testimony (admissible as part of the res gestae) showed that the officers were wounded in the respects shown, we find no reversible error.
5. Witherspoon was wounded in the shoot-out and brought to a hospital. The police officers were informed that a coat (which had been removed from him before they saw it) in the hospital room belonged to Witherspoon. In it, they found an envelope with the money and a check stolen in the robbery. The coat was identified by witnesses as similar to that Witherspoon was wearing at the time of the robbery. When he took the stand, Witherspoon himself admitted the coat seemed to be his and that he had taken the money. We find no merit to the objection that the admission of the money and check was erroneous, allegedly because the identification of the coat from which it was taken was hearsay. (Bill No. 13.) The other evidence introduced was likewise reasonably identified as that taken from the defendants. (Bill Nos. 14 and 15.) See State v. Dotson, 260 La. 471, 256 So.2d 594 (1972).
6. Owens urges a bill of exceptions taken as to the admission of three vials of blood, one taken from each of the defendants on the night of the arrest. (Bill No. 23.) No objection was made to the previous testimony concerning the chemical analysis of the three blood samples, each of which contained a trace of barbiturates and of no other drugs. The state's apparent purpose in introducing the testimony was to negative the potential defenses indicated by voir dire questioning that specific criminal intent may have been negated by a drugged condition. La.R.S. 14:15(2). (In the fact, only the defendant Witherspoon attempted to advance such a defense.) The objection was in globo to the admission of all three blood samples. Pretermitting whatever merit there may have been had Owens individually objected to the admission of his own blood sample (on the ground that such was irrelevant to his own defense), no objection was made to the testimony that an analysis of his blood contained a trace of barbiturates, and we do not see that the subsequent admission of the vial itself was prejudicial. Additionally, when he himself took the stand, he freely testified that, as a seriously wounded Vietnam veteran with painful residual, he was required under doctor's prescription to take barbiturates. Therefore, even if the testimony was irrelevant as to him, we cannot see that it was prejudicial under the circumstances.
7. The remaining non-abandoned bills of all defendants, such as to the failure to give special instructions requested, or as to hold that a 75-year sentence for armed robbery constitutes cruel and unusual punishment, concern issues as to which the trial court's rulings are clearly correct under existing jurisprudence.

Decree
For the reasons assigned, we affirm the convictions and sentences.
Affirmed.
BARHAM, J., dissenting in part and concurring in part with reasons.
BARHAM, Justice (dissenting in part, and concurring in part).
I dissent from the failure of the majority to reverse the conviction of Owens. I am of the opinion that Owens' motion for severance should have been granted or that the evidence of the gun battle between the other two defendants and the police should not have been used in this prosecution which included Owens.
The majority states that Owens could not be prosecuted as a principal, under the attempted murder charge which arose out of the gun battle after the armed robbery.
*505 Then the majority states that the evidence surrounding the gun battle was part of the res gestae, thus admissible against Owens in the armed robbery trial.
I am of the opinion that Owens' involvement as a principal in the crime of armed robbery ceased before the subsequent attempted murders. Evidence of the conduct of the principals of another and separate crime can never be part of the res gestae of the crime for which a third party is charged unless he is also a principal to the separate crime. The fact that the majority has determined that these are separate and distinct offenses and that one of these offenses does not in any way involve Owens as a principal admits, it appears to me, that the separate offense is not part of the res gestae of the armed robbery as to the defendant Owens.
I reiteratethe severance should have been granted. Since it was not, Owens is entitled to a reversal because of the admission of the extraneous evidence of an offense committed by others which was highly prejudicial to him.
NOTES
[1] Owens relies upon 24 perfected bills (Nos. 1-18, 20, 21, 23-26). Witherspoon and Clark perfected 19 bills, which in the main duplicate Owen's bills 6-26.