309 So.2d 321 (1975)
STATE of Louisiana
v.
W. Heyward RESTER.
No. 55361.
Supreme Court of Louisiana.
February 24, 1975.
*322 Lawrence R. Anderson, Jr., Newman, Duggins, Drolla & Gamble, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Clayton S. Knight, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
This is an out-of-time appeal from the defendant's February, 1968 conviction for murder. He was indicted by the Washington Parish Grand Jury in April of 1967 for the murder of Newton Thomas. Jury trial was held on February 9, 1968 and the defendant was found guilty without capital punishment. Motions in arrest of judgment and for a new trial were denied, and the defendant was sentenced to life imprisonment. Although a motion for appeal was made, the appeal was never perfected. After federal habeas corpus action this appeal was lodged.
On appeal defendant relies on eleven specifications of error. The first assigned error concerns the denial of defendant's motion to quash the grand jury and petit jury venires. Defendant urged several different reasons for quashing the jury venires at trial, and he reasserts these on appeal.
At the hearing on the motion to quash, defendant complained that the jury commission was illegally constituted, acted in an illegal manner and that therefore its actions were null.
The defendant killed the victim with a shotgun on the evening of March 1, 1967. Defendant was indicted April 14, 1967. The grand jury had been selected October 4, 1966. The jury commission was composed of six members. The same jury commission had selected the venire from which the petit jury was drawn.
January 1, 1967 the Code of Criminal Procedure became effective. C.Cr.P. 404 provides for a jury commission, of five members. Under article 175 of the Code of Criminal Procedure of 1928, the jury commission consisted of six members.
Therefore, argues defendant, the grand and petit juries were illegally constituted. Defendant further argues that the commission did not meet in public and did not act as a commission in selecting names, receiving selections from individual commissioners.
Defendant argues that, under the authority of State v. Bain, 135 La. 776, 66 So. 196 (1914), the venire was illegally constituted and was a "jurisdictional matter" affecting the legality of the proceedings.
As was noted in the dissent in the Bain case (one commissioner continued to serve after he became ineligible), a properly convenire box and immediately returned all *323 stituted commission could have purged the names to the box which had been selected by the "illegal" commission, and the accused could not complain. No harm is done the accused. He is not tried by unqualified jurors, and his rights to a fair trial by qualified and impartial jurors are not prejudiced.
In the case before us, defendant shows no harm, no discrimination (except for the absence of female jurors) and no prejudice. The jury commission, though it did not comply with the law at the time here involved, was apparently legally constituted when its members took office. It was a de facto commission and its acts in preparing the jury lists were valid. State v. Cullens, 168 La. 976, 123 So. 645 (1929); State v. Phillips, 164 La. 597, 114 So. 171 (1927).
The only evidence that the commission's meetings were not public, as required by C.Cr.P. 404, is that they were held in the police jury meeting room instead of the clerk's office. There is no showing that persons were excluded from the meetings. Nor is there any prohibition against the method employed to select names for the general venire. The fact that each member might submit a number of names from a certain area is not prohibited.
Defendant argues, from an isolated answer of one commissioner, Varnado, that he obtained the approval of the judge and district attorney before placing names in the box. That is not the fair import of that commissioner's testimony. He obtained names at random from various sources. We would not approve a submission of names to a district attorney to form the general venire, and the record does not show such a practice existed here.
There is no error in these assignments.
Nor will we reverse because of the exclusion of women from the venire. Although Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) held that Louisiana had unconstitutionally excluded women from juries (a system which this State abandoned by the adoption of Louisiana Constitution of 1974), the United States Supreme Court in Daniel v. State of Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), held that the Taylor decision would not be applied retroactively.
Opinions concerning retroactive or prospective application of new-found constitutional rights are not good subjects for careful analysis. They tend only to the conclusion that their results are dictated less by law and reason than by expedient judicial administration. Except where the new rule is said to go to "the very integrity of the fact-finding process" (Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965), the cases do not force retroactive application of the new rule. Mallamud, Prospective Limitation and the Rights of the Accused, 56 Iowa Law Review, 321 (1970-71).
We do not consider that the absence of women on Louisiana juries goes to the integrity of the fact-finding process. The retroactive application of the new rule would have a substantial impact on our judicial system, although this factor should not control our decision. We are convinced, however, that persons convicted by juries in Louisiana prior to 1975 received fair trials, or, at the very least, were not unfairly convicted because of the absence of women from juries.
Therefore, we will follow the Daniel case, and the Taylor case will not be enforced retroactively in Louisiana.
Defendant also contends that the jury selection was unfair because of the exclusion of lower class wage earners. The evidence adduced at the motion to quash does not support this contention.
Finally, defendant contends that the trial jury was improperly prejudiced because the State was allowed to challenge for cause all jurors who merely voiced *324 general objections to the imposition of the death penalty. Since the jury did not return a sentence of death, no valid complaint can be based on alleged violations of the Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) guidelines. State v. Fallon, 290 So.2d 273 (La.1974); State v. Shilow, 252 La. 1105, 215 So.2d 828 (1968).
The second specification of error concerns the refusal to release the defendant on bail during the investigation and trial of the case. The Louisiana system concerning bail in capital cases is set out in C.Cr.P. 313. In this case the bail hearing was before the indictment and the burden was properly placed on the State to show that the "proof was evident or the presumption great" that the defendant committed the alleged crime. Because there has now been a trial and conviction the bail issue is moot and will not be reviewed on appeal. State v. Green, 275 So.2d 184 (La.1973).
Defendant next complains of the trial judge's refusal to excuse for cause a certain juror who had allegedly employed the victim and therefore might be prejudiced. Defendant did not use all of his peremptory challenges and under the well settled jurisprudence of this State cannot now complain about the refusal to dismiss for cause. State v. Johnson, 301 So.2d 609 (La.1974); State v. Reese, 250 La. 151, 194 So.2d 729 (1967), cert. den. 389 U.S. 996, 88 S.Ct. 485, 19 L.Ed.2d 495.
During the trial several photographs of the victim were introduced by the State. Defendant objected to their introduction claiming that they were vulgar and gruesome and that their prejudicial effect greatly outweighed any probative value they might have. The pictures in this case are not pleasant; however, they do not show gruesome details or atrocities to the body which would substantially prejudice the jury. The pictures were admitted to show the jury the wounds which caused the death. It should also be noted that several other photographs of the body were introduced without objection from the defendant. Under the facts of this case the ruling on the introduction of the photographs of the victim was not an abuse of the trial judge's discretion in matters concerning the admissibility of evidence. State v. Chavers, 294 So.2d 489 (La.1974); State v. Morris, 292 So.2d 215 (La.1974).
Defendant next complains that the State was allowed to introduce evidence outside the scope of the opening statement, when one witness was allowed to testify that the time of the murder was late at night. During the opening statement the district attorney had indicated that the murder occurred around sundown. C.Cr.P. 769 prohibits the introduction of evidence not fairly within the scope of the opening statement. Although this witness' testimony as to the time of the murder was considerably different than that set out in the opening statement, the trial judge did not abuse his discretion in allowing this variance from the opening statement. No surprise was claimed by the defendant. In fact the objection came long after the actual testimony. Article 769 allows the trial judge to permit the State to exceed the scope of the opening statement if there will be no prejudice to the defendant. The trial judge did not abuse his discretion in allowing the evidence. See, State v. Dobard, 262 La. 225, 263 So.2d 16 (1972).
Defendant also complains that the trial judge refused to allow him to introduce evidence of the character of the deceased in his attempt to show that the shooting was in self-defense. The objection came after the defense counsel asked the defendant if he was afraid of the victim. The trial judge ruled that the defendant had not yet shown the requisite overt act to allow the introduction of evidence of the character of the victim. R.S. 15:482. Subsequently, the defendant was allowed to testify that he was afraid of the victim. The defense never asked anyone directly *325 about the reputation or character of the victim. Under these circumstances the defendant has no complaint. The only question objected to was later answered by the defendant. The court's ruling did restrict the defense from asking about the character of the victim but only until proof of an overt act was offered. This ruling was correct. R.S. 15:482.
Defendant reurges all of the above arguments as grounds for the reversal of the trial judge's refusal to grant a new trial or arrest the judgment. For the reasons stated above, this contention is without merit.
Finally, counsel for defendant argues that the defendant was denied effective assistance of counsel. This contention is without merit. The defendant had retained counsel of his choice at the trial. His trial counsel filed and argued several preliminary motions. He cross-examined the State's witnesses and put on an affirmative defense. Trial counsel's actions cannot be classified as ineffective assistance under any of the current standards. Bell v. Alabama, 367 F.2d 243 (5th Cir. 1966); Williams v. Beto, 354 F.2d 698 (5th Cir. 1965); Moore v. United States, 432 F.2d 730 (3d Cir. 1970), United States ex rel. Green v. Rundle, 434 F.2d 1112 (3d Cir. 1970).
For the reasons assigned, the defendant's conviction and sentence are affirmed.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
I am of the opinion that at least in all cases pending trial or appellate proceedings where females have been excluded from jury service a reversal is required. We are not required to follow the United States Supreme Court pronouncement of prospectivity of the rule of Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) as announced in Daniel v. State of Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975). Logic and rationale are absent from those opinions to support a ruling of prospectivity in cases in the criminal justice "pipeline."
I respectfully dissent.