437 So.2d 309 (1983)
STATE of Louisiana, Appellee,
v.
Carl Sidney FOSTER, Defendant-Appellant.
No. 15389-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 1983.
Motion For Untimely Writ Application Denied October 17, 1983.
*312 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty., Joseph T. Mickel, Asst. Dist. Atty., Monroe, for state-appellee.
C. Joseph Roberts, III, Smith & Hingle by J. Randolph Smith, Monroe, for defendant-appellant.
Before PRICE, HALL, JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
The defendant, Carl Sidney Foster, was convicted of second degree murder, R.S. 14:30.1, after a trial by jury and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. Foster appeals his conviction asserting eleven assignments of error. We affirm.
The Facts
On the night of January 8, 1982, Carl Sidney Foster, then 17, attended a party at a residence on Gordon Avenue in Monroe, Louisiana. Foster drank throughout the evening and used some marijuana at the party. At the party, Foster met Virginia Neathery, 55, who told him she had a large amount of money in her purse. Eventually, Foster and Neathery left the party together to go to her home for another drink.
Upon their arrival at her home Neathery began preparing drinks in the kitchen. When she bent over to pick up something from the floor, Foster grabbed a liquor bottle and smashed it over her head. Neathery collapsed but remained concious. She asked Foster why he was attacking her. Apparently he did not reply but he did smash several more large bottles and a Corning Ware dish over her head. Finally, Foster took a large knife and plunged it completely through her neck. Virginia Neathery eventually bled to death from her various wounds.
Foster then ransacked the house taking a bag of change, a charm bracelet, some rings and a revolver. He also took all the money in the victim's purse which turned out to be only eight dollars.
Next, Foster dragged Neathery out of the kitchen and the broken glass and into the next room where he removed the clothing from the lower half of her body. Foster performed both anal and vaginal intercourse on Neathery. He then bathed and attempted to wipe out his fingerprints from inside the house. Foster then left taking the victim's car which he abandoned before retrieving his own from the home of a friend.
After the killing was discovered an investigation was begun by the Monroe Police Department. On January 14, 1982, the officers decided to question Foster concerning the crime. Foster was taken to the police station and informed of his Miranda rights. He first gave an exculpatory statement but when the officers confronted him with their evidence against him, including his fingerprints from inside the victim's home, and formally placed him under arrest, Foster recanted. After again being given his Miranda rights he confessed to the killing of Virginia Neathery as set out above.
*313 Foster was indicted for first degree murder. Counsel was appointed for him and he initially pleaded not guilty. Later he changed his plea to not guilty and not guilty by reason of insanity. The state amended the charge to second degree murder. Foster withdrew his insanity plea before trial.
The matter was tried and the jury convicted Foster of second degree murder of Virginia Neathery. Foster's motion for a new trial was denied. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence as required by R.S. 14:30.1. This appeal followed.
Assignments 1 and 7
The defendant assigns as error the denial of his motion to suppress his statements to the police (no. 1) and the admission at trial of testimony tending to show probable cause for his arrest (no. 7).[1]
The defendant contends that his statements should be suppressed on two grounds: first, because they were not freely and voluntarily given due to his intoxication at the time of questioning and, second, because they were given after he was arrested without probable cause. We begin by considering the first asserted grounds.
An accused's intoxication must be of such a degree as to negate his comprehension and render him unconscious of the consequences of what he is saying in order to render his statement not free and voluntary and inadmissible by reason of intoxication. State v. Robinson, 384 So.2d 332 (La.1980).
The admissibility of a confession is a matter for determination by the trial judge and his conclusions as to the credibility of witnesses testifying as to the voluntariness of the statement will not be disturbed unless unsupported by the evidence. State v. Robinson, supra, State v. Scott, 355 So.2d 231 (La.1977); State v. Fisher, 380 So.2d 1340 (La.1980).
At the motion to suppress the defendant presented testimony by Glenda Stelly and her daughter Suzanne. The defendant resided with the Stellys at the time he was picked up by the police. The Stellys testified that when Foster arrived at home, shortly before he was picked up by the police, he had a partially empty bottle of liquor in a paper sack. They further testified that Foster seemed "hyper" and that his face appeared "puffy". They testified that these conditions occurred when Foster had been drinking.
The police officers testified that Foster appeared normal and that he did not exhibit any characteristics that they associated with intoxication. A review of the transcripts of the two statements shows that Foster's answers to the officer's questions were coherent and responsive. Most significant is Foster's response to the following question, asked near the conclusion of his first statement:
Q. Uh ... just before we end, I would just like to ask him, are you under the influence of any alcohol or any drug or anything like that?
A. You talking about right now?
Q. Right.
A. No sir. (R. 39)
The evidence strongly supports the trial judge's conclusion that the statements were freely and voluntarily given and are not inadmissible by reason of the intoxication of the defendant.
We now turn to the defendant's contention that he was arrested without probable cause and that, therefore, his statements must be suppressed. The decisive issue is whether the officers had probable cause *314 when they arrested Foster.[2]
In reviewing a ruling on a motion to suppress the court looks at the totality of the evidence produced at the hearing on the motion and at trial.[3]State v. West, 408 So.2d 1302 (La.1982); State v. Beals, 410 So.2d 745 (La.1982); State v. Fisher, supra, State v. Dunbar, 356 So.2d 956 (La.1978).
A peace officer may make a warrantless arrest when he has "reasonable cause" to believe that the person to be arrested has committed an offense, although not in the officer's presence. C.Cr.P. art. 213. The term "reasonable cause" as used in the statute has been interpreted to be synonymous with probable cause. State v. Dell, 258 La. 1024, 249 So.2d 118 (1971); State v. Drew, 360 So.2d 500 (La.1978).
Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Ranker, 343 So.2d 189 (La.1977); State v. Herbert, 351 So.2d 434 (La.1977). Probable cause is less than the degree of proof required for conviction. State v. Winfrey, 359 So.2d 73 (La.1978).
The existence of probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Marks, 337 So.2d 1177 (La.1976); State v. Tomasetti, 381 So.2d 420 (La.1980); State v. Bourgeois, 388 So.2d 359 (La.1980); State v. Crain, 409 So.2d 603 (La.1982). One of the most important elements in determining whether probable cause exists is satisfied when the officers actually know that a crime has been committed. State v. Bell, 395 So.2d 805 (La.1981); State v. Johnson, 363 So.2d 684 (La.1978).
The trial judge's conclusions as to probable cause are entitled to great weight. State v. Nicholas, 397 So.2d 1308 (La.1981); State v. Drott, 412 So.2d 984 (La.1982).
The officers involved here knew that Virginia Neathery had been killed and that her home had been ransacked and robbed. They knew that Foster had been at a party attended by the victim on the night of January 8, 1982, and that he was the last known person to see her alive. From a statement that Foster made to the hostess on the day following the party the officers knew that he had gone home with the victim and that Foster had complained of the victim having only had eight dollars rather than the large amount she claimed.[4] *315 These circumstances, particularly the officer's knowledge of the crime, the defendant's presence in the victim's home and the defendant's remarks concerning the amount of money the victim had, are sufficient to justify a person of average caution in believing that Foster committed the crimes. The officers had probable cause to arrest the defendant at the time they picked him up. Cf. State v. Billiot, 370 So.2d 539 (La. 1979), U.S. cert. den., 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979) (officers had probable cause to arrest defendant when they knew cab driver was missing, that defendant was driver's last known passenger and the abandoned cab contained signs of foul play).
The motion to suppress was properly denied. These assignments of error are without merit.
Assignments 2 and 3
The defendant assigns as error the trial judge's appointment, over his objection, of a psychiatrist to examine him as to his sanity at the time of the offense (no. 2) and the denial of his motion to suppress the psychiatrist's findings (no. 3).
We note that assignment two is apparently groundless in light of the mandatory language of C.Cr.P. art. 646[5] directing the examination upon request, but we do not base our decision on that grounds because the alleged error, even if error, was harmless as defendant abandoned his insanity defense prior to trial. As the defendant was not harmed by the ruling it is not grounds for reversal even if erroneous. C.Cr.P. art. 921.
With respect to assignment three we note that the evidence sought to be suppressed was not used at trial. There is no prejudicial error in the denial of a motion to suppress if the evidence sought to be suppressed is not introduced at trial. State v. Edwards, 351 So.2d 500 (La.1977).
These assignments of error do not present reversible error.
Assignment 4
The defendant assigns as error the denial of his challenges for cause to prospective jurors Donley, Lytle, Moss and Jenkins.[6]
The trial judge is vested with broad discretion in ruling on challenges for cause and his ruling on such challenges will be reversed only when it appears upon a review of voir dire as a whole that the trial judge's exercise of his discretion was arbitrary or unreasonable resulting in prejudice to the accused. State v. McIntyre, 381 So.2d 408 (La.1980), U.S. cert. den., 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980); State v. Passman, 345 So.2d 874 (La.1977); State v. Clark, 340 So.2d 208 (La.1976), U.S. cert. den., 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977). However, a defendant who exhausted his peremptory challenges need not show any prejudice beyond the incorrect denial of a challenge for cause. State v. Sugar, 408 So.2d 1329 (La.1982).
Donley was challenged for cause on grounds of her unwillingness to accept the presumption of innocence. Though Donley initially appeared to understand and accept the presumption of innocence she indicated some misunderstanding of it during questioning by defense counsel. We note, however, that Donley repeatedly and firmly indicated her willingness to accept and apply the presumption of innocence and the law as instructed by the court.
A juror need not be excused on a challenge for cause because of honest confusion over the presumption of innocence when he subsequently indicates he would apply the *316 presumption and law as given by the court. State v. Liddell, 318 So.2d 1 (La.1975).
Appellant further challenges Donley for cause for the reason that she indicated that she would not consider his defense of intoxication. While Donley indicated a reluctance to consider this defense she clearly declared that she would accept and apply the law on the defense of intoxication as given to her by the court, and for this reason the judge's rejection of the challenge for cause was proper. State v. McClure, 258 La. 999, 249 So.2d 109 (1971); State v. Witherspoon, 292 So.2d 499 (La. 1974).
Lytle was challenged for cause on grounds that he improperly considered the charge some evidence of guilt. A review of the voir dire examination shows that he regarded the charge as an indication that law enforcement officials had some evidence of guilt. The voir dire examination also shows that Lytle repeatedly indicated that he would decide the case solely on the evidence presented in the courtroom and that he would apply the presumption of innocence as instructed by the court. The trial judge did not err in denying the challenge for cause. State v. Rowan, 246 La. 38, 163 So.2d 87 (1964); State v. Epperson, 289 So.2d 495 (La.1974); State v. Normand, 298 So.2d 823 (La.1974), U.S. cert. den., 420 U.S. 908, 95 S.Ct. 827, 42 L.Ed.2d 838 (1975).
Moss was challenged for cause on grounds that he would not accept the defense of intoxication. The voir dire examination shows that, though Moss entertained personal doubts about the defense of intoxication, he steadfastly maintained that he could put aside his reservations and accept and apply the law concerning the defense of intoxication as instructed by the court. The challenge for cause was properly denied. State v. McClure, supra, State v. Witherspoon, supra.
Jenkins was challenged for cause on grounds that he could not be impartial due to his views on the credibility of marijuana users. We have thoroughly reviewed the entire voir dire examination of Jenkins. We note that it is sometimes contradictory and often confusing. Jenkins testified that he would not close his mind to the testimony of witnesses who used drugs but, he also testified that he would not necessarily believe such testimony. On other occasions he expressed extreme reservations about the credibility of such testimony.
Jenkins' responses during voir dire examination reveal him to be intelligent and candid. During voir dire Jenkins indicated that he could accept the concepts discussed with the previously examined jurors. One of the concepts most frequently discussed was the necessity of accepting and applying the law as instructed by the trial judge. Jenkins' response indicates that he could do that.
The trial judge had the opportunity to observe Mr. Jenkins and listen to his responses. After doing so, the trial judge concluded that Jenkins was qualified and could serve as an impartial juror. We cannot say that the trial judge was arbitrary or unreasonable in reaching that conclusion. It was within the range of the trial judge's wide discretion to deny the challenge for cause. Cf. State v. Bastida, 310 So.2d 629 (La.1975) (Challenge for cause properly denied where juror who initially indicated he would disbelieve narcotics addicts subsequently indicated he would accept and abide by the law on credibility as given by the court).
This assignment of error lacks merit.
Assignment 5
The defendant assigns as error the failure to sustain his objections to evidence concerning the party on Gordon Avenue and the denial of his motion for mistrial. The crux of the defendant's argument is that because of the prosecutor's reference in his opening statement to the location of the party as on Grammont Street, evidence about a party on Gordon Avenue was inadmissible and the mistrial should have been granted.
The prosecutor's misstatement was inadvertent and the defense conceded that it was not surprised by the evidence showing *317 that the party was on Gordon Avenue. The defendant rejected an offer by the trial judge to have the assistant district attorney correct his misstatement to the jury. There is no indication that the defense was prejudiced.
An inadvertent misstatement by the prosecutor in his opening statement does not require a mistrial. State v. Dobard, 262 La. 225, 263 So.2d 16 (1972). Under the circumstances the testimony was properly admitted and the motion for mistrial was properly denied.
This assignment of error is without merit.
Assignment 6
The defendant assigns as error the denial of his motion for mistrial on grounds that evidence of an inculpatory statement was admitted without proper Article 768 notice. See C.Cr.P. art. 768. The statement in question is the defendant's remark to Anne Varner on the day following the party when he returned to pick up his jacket. On that occasion Foster said to Varner, "That old lady was crazy, she said she had $300 in her purse and when I got over there she had eight."
Prior to trial the state filed an "Amended 768 Notice" which informed defendant of its intent to introduce at trial an oral inculpatory statement made to Anne Varner on January 10, 1982, at her residence on Gordon Avenue. Even at trial Mrs. Varner was confused as to the date of her conversation with Foster. However, the totality of the evidence indicates that the conversation actually took place on January 9, 1982, rather than on the 10th as stated in the notice. Defendant argues that because of this inaccuracy a mistrial should have been granted.
The purpose of C.Cr.P. art. 768 is to avoid surprise and to allow the accused adequate time for the preparation of a defense. State v. Thomason, 353 So.2d 235 (La.1977). To this end the state must give notice of an inculpatory statement with sufficient specificity as to date or occasion and as to persons to whom made so as to afford adequate notice sufficient to permit the defendant a fair opportunity to meet the issue, however, there is no reversible error in admitting testimony despite a technical insufficiency in the Article 768 notice where the accused in fact had notice. State v. Sneed, 316 So.2d 372 (La.1975).
Where there is not full compliance with the notice requirements the court will examine the entire record to determine whether the defendant was prejudiced. State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970).
The record indicates that Foster did not know Mrs. Varner and that he spoke to her on only two occasions, first at the party and again the next day when he returned for his coat. This later occasion and the day on which it occurred are discussed in the transcript of the defendant's first recorded statement which was supplied to the defense by the state in its answer to the motion for discovery filed March 23, 1982. The 768 notice, though inaccurate as to the date of the statement, was accurate and specific as to where and to whom the statement was made. We note that the day he returned for his coat is the only occasion when Foster could have made a statement to Mrs. Varner of which Article 768 notice would have been required.[7] The Article 768 notice given to defendant, particularly when coupled with the answer to the discovery motion, was adequate to apprise him of when, where and to whom the statement was made. It afforded him a full opportunity to meet the issue. The motion for mistrial was properly denied. Cf. State v. Machon, 410 So.2d 1065 (La.1982) (inculpatory statement properly admitted where notice was incorrect as to the place where and the person to whom made).
This assignment of error is without merit.
Assignment 8
The defendant assigns as error the use in evidence of two allegedly gruesome photographs, S-1b and S-1d, his tape recorded *318 statements to the police and the waiver of Miranda rights forms signed by him before the statements. With respect to the waiver forms and recorded statements the defendant relies on his arguments with respect to assignments 1 and 7. For the reasons previously expressed we reject those arguments. We now turn to the question of the photographs.
The defendant argues that the photographs are cumulative and highly prejudicial and that they should not have been admitted into evidence. Both the photos are black and white. S-1d shows the clothed upper half of the victim's body lying face down on the floor. There is some blood visible on the back of the victim's jacket but it appears only as a black spot. The photo also shows the towels which defendant used to cover the victim's body piled next to her.
S-1b is another view of the victim's body lying face down on the floor. The upper half of her body is covered with towels. The only blood visible appears as a black spot on one of the towels. This photo also shows that the victim is unclothed from the waist down, though as it was taken from the direction of the victim's head the semi-nude condition is not displayed in a gross or sensational fashion.
The test of admissibility of allegedly gruesome photographs is whether their probative value outweighs their potential prejudicial effect on the jury and the trial judge's ruling on the use of such photographs will not be disturbed unless the inflammatory effect clearly outweighs the probative value. State v. Unger, 362 So.2d 1095 (La.1978); State v. Boyer, 406 So.2d 143 (La.1981).
The defendant's contention to the contrary notwithstanding, these photographs are not inflammatory or gruesome. They are admissible to corroborate the defendant's confession. State v. Sterling, 377 So.2d 58 (La.1979). S-1b, which shows that the victim was nude from the waist down, is admissible to show that the murder was committed in the course of a rape. State v. Frezal, 278 So.2d 64 (La.1973). See State v. Vernon, 385 So.2d 200 (La.1980), and State v. Spell, 399 So.2d 551 (La.1981) (photos relevant to corroborate other evidence). The probative value of the photographs exceeded any possible prejudicial effect and they were properly admitted into evidence.
This assignment of error is without merit.
Assignment 9
The defendant assigns as error the trial judge's inclusion in the charge to the jury instructions as to the defense of intoxication beyond a simple reading of R.S. 14:15. The defendant cites no relevant authority in support of his position and our review of the charge discloses that the complained of instructions are not inconsistent with R.S. 14:15. The instructions merely provided some explanation for the jury. The trial judge did not err in including those instructions in the charge.
This assignment is without merit.
Assignment 10
The defendant assigns as error his conviction on insufficient evidence. It is defendant's contention that the evidence does not support a verdict of guilty of second degree murder. He argues that there is insufficient evidence that he had the specific intent to kill or do great bodily harm to the victim.
The test for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The evidence shows that Foster killed Virginia Neathery by repeatedly striking her on the head with bottles and dishes and by stabbing her through the neck with a large knife. These facts would permit, and probably compel, a rational trier of fact to infer and find beyond a reasonable doubt that Foster specifically intended to kill or do great bodily harm to Virginia Neathery.
*319 The defendant suggests that no rational trier of fact could have found the existence of specific intent in light of the evidence of his intoxication. While the defendant did present evidence that he had consumed alcohol and marijuana on the evening of the murder, the evidence as a whole, particularly when viewed in the light most favorable to the prosecution, shows that the defendant was not so intoxicated as to preclude specific intent.
Foster's statements to the police show a full and specific recall of the details of the evening of the murder up to and through the time the killing occurred. The evidence shows that following the killing the defendant had the presence of mind to attempt to conceal the knife he had used to stab Virginia Neathery. Foster carefully covered the victim with towels before the sex acts to insure that he would not get bloody. Before leaving the victim's residence Foster attempted to destroy the evidence of his presence by wiping away his fingerprints. These facts indicate that, though the defendant had been drinking, he was not so intoxicated as to preclude his having the specific intent indicated by his acts. A rational trier of fact could reasonably reject the defense of intoxication and find beyond a reasonable doubt that Foster specifically intended to kill or do great bodily harm to Virginia Neathery.[8]
This assignment of error is without merit.
Assignment 11
The defendant assigns all errors patent upon the face of the record. There being none this assignment of error is without merit.
Conclusion
For the foregoing reasons the defendant's conviction and sentence are AFFIRMED.
NOTES
[1] With respect to assignment seven the defendant does not complain of the admission of any specific evidence and instead, he makes a generalized attack on the policy of appellate courts in considering all relevant evidence produced at hearing and trial in reviewing rulings on motions to suppress. The defendant's "argument" is not supported by the citation of any relevant authority. Neither does it suggest any cogent reason to abandon the abovementioned policy which has been established by our supreme court (see cases cited infra).
[2] We note that this case does not involve a nonconsenual entry into a residence for the purpose of a routine felony arrest which is proscribed by the Fourth Amendment. See Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

Here the officers went by defendant's home and left word that they wanted to speak to him. When Foster returned home he was given the message and he called the officers and volunteered to come to the police station. However, due to poor weather conditions the officers preferred to pick up Foster at his home.
Upon arriving at the defendant's home the officers warned him of his Miranda rights. They also informed Foster that he was not under arrest and did not have to go with them. However, Foster still agreed to go with the officers. He rode to the station with the officers in their car. The defendant was not handcuffed or otherwise restrained either at his home or in the police car. Under the facts of this case there was no nonconsenual entry into the defendant's home and there was no arrest in the residence.
The exact moment that defendant was arrested is unclear. For the purpose of considering assignment one we will assume that the defendant was under constructive arrest from the moment he entered the police car at his home. See State v. Billiot, infra.
[3] This is particularly important where, as here, the state is prevented from making a full showing of its probable cause at the hearing on the motion to suppress because of several erroneous rulings on the admissibility of evidence.
[4] The officers may have also had fingerprint comparisons showing that Foster had been inside the victim's home. The state's questioning along this line at the hearing on the motion to suppress was curtailed due to an erroneous ruling by the trial court on a defense objection. Thus, it is unclear whether the officers were aware of the results of the fingerprinting examination before they constructively arrested defendant. For the purpose of considering this assignment of error we assume that they were not.
[5] "The court order for a mental examination shall not deprive the defendant or the district attorney of the right to an independent mental examination by a physician of his choice, and such physician shall be permitted to have reasonable access to the defendant for the purposes of the examination."
[6] Lytle, Moss and Jenkins were subsequently excused by the defendant through peremptory challenges. Only Donley actually served on the jury.
[7] Statements made at the party would have been before the crime occurred and not within the scope of C.Cr.P. art. 768. State v. Williams, 326 So.2d 815 (La.1976).
[8] The defendant also contends that the conviction could not be based on R.S. 14:30.1(2) which applies when the killing occurs during the perpetration or attempted perpetration of certain enumerated felonies. Defendant's reasoning is that Virginia Neathery was dead at the time she was robbed and raped and, thus, there was no crime because the victim was dead.

Having concluded that the conviction was proper under R.S. 14:30.1(1) we find it unnecessary to discuss these contentions. However, we do observe that the evidence strongly indicates that Virginia Neathery was alive during the robbery though she may have bled to death by the time Foster mounted his sexual attacks.