HAMLIN, Justice:
The defendant appeals to this Court from his conviction of the offense of attempted murder and his sentence to serve twenty years in the Louisiana State Penitentiary.[1]
*855 By Bill of Information filed December 16, 1969, defendant was charged with the offense of attempted murder alleged to have been committed on December 11, 1969. After the State filed its answer to a Motion for Bill of Particulars, defense counsel on January 27, 1970, filed a Motion for Appointment of a Sanity Commission. On January 30, 1970, the trial court appointed Drs. Stuart DeLee and Andrew J. Mullen as a Sanity Commission to examine the defendant and report his mental capacity according to law. On May 15, 1970, the trial court held a hearing to determine the issue of defendant’s present mental capacity; evidence was adduced in part, and the matter was continued for the taking of Dr. Mullen’s testimony. On May 25, 1970, Dr. Mullen gave his testimony, and the trial court then ruled that the defendant had the mental capacity to proceed to trial. Defendant was arraigned and pleaded “Not Guilty” and “Not Guilty by Reason of Insanity.” tie was remanded to jail to await trial. Trial commenced on June 8, 1970, and defendant was thereafter found guilty as charged. Sentence was imposed, and a pre-sentence investigation was denied by the trial judge; a Motion for a New Trial was overruled. The matter is now before us on appeal.
Counsel for the defendant submits that the trial court committed two errors during the course of the proceedings, namely, (1) in “accepting the report of the Sanity Commission that the defendant was sane to stand trial,” and (2) in “refusing to authorize funds previously authorized by the Indigent Defender Board for use in obtaining expert psychological testing of the defendant’s mental capacity.” Five Bills of Exceptions reserved by defense counsel are accumulated under the assigned errors.
SPECIFICATION OF ERROR NO. 1

(Bills of Exceptions Nos. 1, 2, 3 and 5)

Bill of Exceptions No. 1 was reserved to the refusal of the trial judge to quash the report of the Sanity Commission appointed by the trial judge to examine the defendant.
Bill of Exceptions No. 2 was reserved to the refusal of the trial court to appoint a second Sanity Commission to inquire into the sanity of the defendant.
*857 Bill of Exceptions No. 3 was reserved to the ruling of the trial judge that the defendant was presently competent to stand trial.
Bill of Exceptions No. 5 was reserved to the trial judge’s overruling defense counsel’s motion for a pre-sentence investigation and postponement of sentence pending the results of the investigation.
Herein, defense counsel states that it is not his intention to attempt to persuade this Court that the defendant was incompetent at the time of trial. He says that the purpose of his argument is to demonstrate that, all circumstances considered, the appointed Sanity Commission did not make a proper determination of the defendant’s mental competence. He argues :
“The defendant has a history of mental aberrations, the documented evidence of which was studied by the Sanity Commission. Thus, having been placed on notice that the defendant had previous mental disorders, the Commission, rather than administer available psychometric tests, merely interviewed the defendant for approximately one hour in his jail cell.
“The trial judge determines present insanity based on his personal observation and the findings of a Sanity Commission, if one has been appointed. He has a wide latitude of discretion in his decision. He should, therefore, have the benefit of a thoroughly professional analysis of the alleged mental incompetent so that he may render an intelligent and fair decision.
“The trial judge in the present case did not necessarily abuse his discretion in making his decision that the defendant was capable of standing trial. He did err, however, in accepting the report of the Sanity Commission, after the basis for that report was proven to be of questionable professional standards.
“The acceptance of the report was a denial of due process of law for failure to provide the defendant with a competent mental examination.
“The report of this particular Sanity Commission should have been .quashed and suppressed and another committ.e appointed before the defendant was tendered for trial.”
The report of the Sanity Commission, dated April 28, 1970, recites: ;
“HENRY EARL GRAY

"34-year-old colored male

“We, the undersigned, members- of'the Sanity Commission appointed to examine Henry Earl Gray, submit the following report.
“He has been examined by us on several occasions in the Parish Jail, both separately and together and, in addition, we have studied reports from other hospitals concerning this man, although they are *859 given under different names, which he later admits were used as aliases.
“When seen by one of the Commission, Dr. Mullen, in February, Henry Earl Gray was very uncooperative and appeared to be malingering. (A copy of this report is enclosed.)
“Henry Earl Gray was interviewed again by both the members of the Commission on Friday, April 24th and he presented a different picture at this time. He was cooperative. He gave us the aliases that he had used in the other hospital and he was fully oriented, fully aware of the charges against him and able to give a very coherent history. He showed no signs of any mental aberration or of any psychotic behavior.
“It is the impression of the members of this Commission, after thoroughly reviewing the either reports, interviewing Henry Earl Gray and discussing this at some detail, that Henry Earl Gray is not mentally ill and that he is legally sane. It is our impression that he is able to cooperate with his attorney and participate in his defense.
“Very sincerely yours,
‘TSgdl Stuart DeLee, M. D.
“Stuart DeLee, M. D.
“fSgdl Andrew T. Mullen, M. D.
“Andrew J. Mullen, M. D.”
Drs. DeLee and Mullen testified at the Sanity Commission hearing and during trial. They said, as stated in their report, supra, that they had examined defendant’s Army and hospital records in arriving at their conclusions. (In our opinion, the Army and hospital records disclose that defendant was of an anti-social nature and received psychiatric examinations on several occasions.)
Dr. DeLee testified at the Sanity Commission hearing that he saw the defendant two or three times, one visit being with Dr. Mullen; that the interviews lasted fifteen or twenty minutes, the final one being for a forty-five minute period. The accused was interviewed alone, not with other persons. Pertinent testimony of Dr. DeLee is as follows:
"Q And you saw him two to three times. During these examinations, did you make any of the known psychiatric tests to determine his present mental stability ?
“A Yes, I used the usual method of history and interview. We did not do any psychological tests on him.
“Q Why didn’t you?
“A Why not?
“Q Yes?
“A Doctor Mullen and I neither one thought that any psychological tests would be an advantage in this case.”
*861 On cross-examination Dr. DeLee testified :
“Q Now, Doctor, did you give this man all of the necessary tests and all of the necessary observations which in your opinion as a doctor were necessary for you to make a decision on this matter?
“A I did.
“Q Now, did you examine all of the different records or documents that defense counsel presented you with in this matter?
“A I did.
“Q Now after examining all of these records that defense counsel presented you with, and making all of the tests that in your opinion you thought were necessary, is it your belief and your opinion as expressed in this written opinion that he is able to cooperate with his attorney and to participate in his defense ?
“A It is.”
On trial, Dr. DeLee testified:
“A I think under the circumstances that the psychological tests wouldn’t have revealed a whole lot.
“Q Why do you think they would not have revealed anything?
“A Well, he was uncooperative until the last interview that Dr. Mullen and I had with him. And where the patient is uncooperative the psychological tests don’t reflect the true nature of the disorder.
a * *
“Q And you don’t think that the circumstances of this case indicated the necessity for psychological evaluation by other methods other than the one which you have already said was not proving successful?
“A I don’t think that the psychological tests were indicated in this case.”
With respect to defendant’s condition at the time of the commission of the instant offense, Dr. DeLee testified:
“ * * * Now, Doctor, you have expressed your opinion and that is what I have just read as to the man’s present insanity, that is, his ability to stand trial here, to know the charges against him, and to assist in his defense. Now we come to the question of what was his condition on the morning of this offense. And the test under the law of which I am sure you are familiar says if the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to *863 the conduct in question, the offender shall be exempt from criminal responsibility.
“Now, the conduct in question here is attempt to — attack or an attempt to murder a police officer. Now, Doctor, from all of the background that you know of this man, can you form any opinion as to whether or not he was insane within this definition of Article 14, that is, able to distinguish between right and wrong with reference to the conduct in question at the time of this offense? Could you express any opinion on that?
“A Well, let me say this: Of course, I wasn’t there. I didn’t have a chance to interview him at that time, but it would seem like that he acted like he has done in the past, perhaps, under similar situations. And this was sort of his general behavior pattern. So I would think that he was his usual self at that time.
“Q ■ Well, ■ the question is at that time ' would -he have been able to distinguish between right and wrong ■ with reference to this conduct in question.
“A I think he would have been.”
At the Sanity Commission hearing, Dr. Mullen testified that he had examined the defendant on two occasions, the second one being with Dr. DeLee. He confirmed the finding of the report, supra, that the defendant was able to cooperate with his attorney and participate in his defense. He said his conclusion was to that effect.
During trial, Dr. Mullen testified as follows :
“Q Now, Doctor, the report which you all were giving was for the answering of the question of what was the condition of the man in reference to what we call present insanity; that is, his ability to understand the charges against him and to assist •in his defense; and your report was to the Court that he met that test. Now, the other test, insofar as law is concerned, is the question of insanity at the time of the commission of the crime. And that is the test as given by Article 14 of our code: * * * Now, it is the ability to distinguish between right and wrong with reference to the conduct in question. And in this offense the conduct in question is his attack with a knife and a gun upon a police officer after he had been placed in arrest and had been placed in the back seat of a patrol car. I believe you have read copies of police reports giving the facts of this incident.
“A Yes, sir.
*865 “Q Now, Doctor, from what you have learned concerning the past history of this man, from what you have learned concerning your personal interviews with him and examinations of him, could you express any opinion as to whether or not on December 11th he was capable of distinguishing between right and wrong with reference to the conduct in question ?
a * * *
“A Well, my opinion would be based on the things that you said that he was capable—
“Q (Interrupting) Of distinguishing between right and wrong in regard to the circumstances with reference to the conduct that was in question,
“A Yes, sir, with the qualification, of course, based just on the interviews after this and the record.
“Q That is your opinion based on that?
“A Yes, sir.”
Article 644 of the Code of Criminal Procedure provides that: “When a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall consist of at least one and not more than three physicians who are licensed to practice medicine in Louisiana, and have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment. * * * ” The Official Revision Comment under Article 644 states, in part, “(b) The type of examination and procedures to be followed will be determined by the sanity commission, subject to such general directions as the court may include in the order for examination.”
In State v. Faciane, 233 La. 1028, 99 So.2d 333, 340 (1958), this Court held: “There is nothing in the statute requiring that an accused be kept under constant observation for any fixed period of time, and the legislature has not therein attempted to dictate to these experts the manner and method to be employed by them in conducting their examination, undoubtedly feeling, as do we, that they are eminently better qualified to know just exactly how to best carry out their duty in this respect as the particular facts of each case may warrant. And once the commission’s investigation as to the sanity of the accused has been completed, the only duty imposed upon its members by the statute is that ‘They shall within thirty days make their reports in writing to the presiding judge,’ * * * ” See, State v. Augustin, 241 La. 761, 131 So.2d 56, 58 (1961); 12 Loyola L.Rev. 28; 22 La.L.Rev. 391.
A reading of the testimony, supra, and the above jurisprudence constrains us to conclude that Drs. DeLee and Mullen examined the defendant thoroughly and em *867 ployed proper methods in their determination of his mental competence. Both doctors are skilled professional men. Dr. De-Lce, a graduate of the Tulane Medical School, has practiced medicine in Louisiana since 1942, except for two years when he practiced medicine with the United States Army. He is Coroner for the Parish of Caddo and frequently evaluates the mental competence of persons referred to him; he has served on many Sanity Commissions. Dr. Mullen, in addition to completing medical school, took a three-year residency in psychiatry and neurology at Baylor University in Houston, Texas. He is certified by the American Board of Psychiatry and Neurology and at the time of this trial had been in private practice of psychiatry for twelve years.
Since the Legislature has xxot dictated the manner and method to be employed by doctors carrying out an examination such as the instant one, we conclude that under the facts and circumstances surrounding the defendant’s life, Drs. DeLee and Mullen committed no error in omitting the test which defense counsel asserts should have been given. Under the law it is presumed that every man is sane; the burden is on the accused to establish by a clear preponderance of the evidence that he is so mentally deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in conducting his defense in a rational manner. State v. Marks, 252 La. 277, 211 So.2d 261. Defense counsel has not shown herein that the conclusions of the mental competence of defendant by Drs. DeLee and Mullen would have been different had psychometric tests been administered to him. We find no error in the trial judge’s refusal to quash the report of the Sanity Commission and in his refusal to appoint a second Sanity Commission; likewise, we find no reversible error in the trial judge’s ruling that the defendant was competent to stand trial.
We find no error in the trial judge’s refusal to grant defendant’s motion for a pre-sentence investigation and postponement of sentence. The trial judge ruled that the defendant was presently sane, and the jury found that he was sane at the time of the commission of the instant offense; therefore, under the facts and circumstances of the matter, nothing would have been gained by an investigation, and only unnecessary delay would have resulted. We approve the trial judge’s reasons for his ruling; they recite:
“I don’t think at this stage that anything other than what has already been done would be of any real value to the Court in preparing its sentence. And I think that that evidence has been before the Court. The Court has just recently determined that the man was presently sane. It has taken testimony in the case, admitted testimony by the psychiatrist *869 and by the coroner, all tending to the question of whether or not he is presently sane. All that was brought out in the court, whether he was sane at the time of the crime and whether he was presently sane. Both members of the commission were questioned extensively in court. The Court as well as the jury felt that he was sane. And, consequently, I can see nothing that can be gained by further examination of this defendant.”
Specification of Error No. 1 is without merit.
SPECIFICATION OF ERROR NO. 2

(Bill of Exceptions No. 4)

On June 8, 1970, prior to the commencement of trial on the merits and before the empaneling of the jury, Bill of Exceptions No. 4 was reserved to the trial court’s refusal to grant defense counsel’s motion for the court’s approval of an expenditure of funds by the Indigent Defender Board for the payment of the necessary fees to obtain a proper and full evaluation of defendant’s sanity, and to obtain expert testimony on behalf of the defendant.
As stated supra, the trial judge ruled on May 25, 1970, that the defendant was presently sane. On May 26, 1970, counsel for the defendant addressed a letter to the Indigent Defender Board for funds for the psychiatric examination of defendant. The letter concluded:
“Prior to the time of the hearing, I assumed that the commission appointed by the court would properly perform its duty, and that there would be no need for me to employ another expert to conduct such testing. Now that the commission has presented its report and the court has overruled my motions, it appears that the only remedies are to appeal after trial, or to employ experts at my expense, in order to properly present the defendant’s case under his plea of not guilty by reason by insanity.
“I feel that the obvious dereliction of duty by the sanity commission will form a solid basis for an appeal after trial, but since the defendant’s sanity will be an issue at trial, expert testimony will be needed at that time, and the experts appointed by the court simply have not sufficiently investigated the matter to give this testimony. Further inquiry into the defendant’s mental condition, under the circumstances, is absolutely required. I therefore respectfully request that the Board approve reasonable expenditures in the amount of $200.00 for psychiatric testing and evaluation, and in whatever amount is necessary to cover the fees of at last one expert who will be called to testify on behalf of the defense.”
*871 On June 4, 1970, James E. Clark, Chairman of the Indigent Defender Board, addressed a letter to defense counsel, in which he stated: “ * * * I mailed a letter to each member of the Board, enclosing copy of your request. One of the Board members, Mr. Burton, was absent from Shreveport and is not scheduled to return until June 12. However, the remaining four Board members, including myself, recommended that your request be granted and I communicated this request to Judge Middleton by letter dated May 28, 1970.” Mr. Clark then went on to say that Judge Middleton had informed him that the recommendation of the Board of counsel’s request had been disapproved.
tlerein, counsel for the defendant argues :
“Article 646 of the Louisiana Code of Criminal Procedure provides the defendant the right to an independent mental examination by a physician of his choice. The defendant in the present case was an indigent and of course unable to retain a qualified psychiatrist for detailed examination. He applied to the Indigent Defender Board for the necessary funds and his request was approved. The trial judge refused to approve the grant and the defendant was thus unable to present to the court the findings of his own psychiatrists.
“By virtue of his poverty and circumstances, the defendant was denied the right to an independent physician guaranteed by Article 646 of the Code of Criminal Procedure.”
Article 646 of the Code of Criminal Procedure provides:
“The court order for a mental examination shall not deprive the defendant or the district attorney of the right to an independent mental examination by a physician of his choice, and such physician shall be permitted to have reasonable access to the defendant for the purposes of the examination.”
Had defense counsel applied for the examination of defendant by a private psychiatrist or physician at the time he applied for the appointment of a Sanity Commission, his request would undoubtedly have been granted. The reason for his not applying, stated in his letter, supra, to the Indigent Defender Board, was the presumption that the Sanity Commission would do its duty and there would be no need for the employment of another expert.
We have found, supra, that the Sanity Commission did do its duty, and that the trial judge committed no reversible error in finding the defendant presently sane. Under the facts and circumstances existing in this matter on June 8, 1970, the day the trial commenced, we do not find that the trial judge abused his *873 discretion in refusing counsel’s application for the appointment of an expert to thereafter mentally evaluate defendant. Cf. State v. McManus, 187 La. 9, 174 So. 91. The result of such an examination was speculative and would have caused great delay and a resetting of the date of trial. As stated supra, prior to trial on June 8, 1970, defendant had been examined by two competent doctors; in addition to finding him competent to stand trial, they had expressed their expert opinions, supra, as to his sanity at the time the instant offense was committed. We do not find that the defendant suffered any prejudice by the trial judge’s ruling; we find no reversible error.
Specification of Error No. 2 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.

. The following answer by the State to defendant’s Motion for Bill of Particulars will apprise the reader of the facts the State intended to prove at defendant’s trial and evidently did prove to the jury's satisfaction.
“1.
“The crime was committed on the morning of December 11, 1969, in a Shreveport Police Department automobile parked in the 3700 Block of Tate Street, Shreveport, Louisiana.
*855 “2.
“After Officer K. R. Jackson had placed Henry Earl Gray under arrest and had placed Gray in the back seat of the Police Car, Officer Jackson got in the front seat of the Police Car and then Gray attacked Officer Jackson with a knife inflicting wounds on Officer Jackson’s head. Gray also grabbed Officer Jackson’s pistol from his holster and attempted to shoot Officer Jackson and made the statement that he was going to kill Officer Jackson.
“3.
“In the perpetration of the offense Hen-l-y Earl Gray used as weapons a white handled knife and a pistol.