310 So.2d 629 (1975)
STATE of Louisiana
v.
Leonard Jerome BASTIDA.
No. 55564.
Supreme Court of Louisiana.
March 31, 1975.
*631 George P. Vedros, Gretna, for defedant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Jacob J. Amato, Jr., Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Parish of Jefferson, Gretna, for plaintiff-appellee.
CALOGERO, Justice.
The defendant, Leonard Jerome Bastida, was charged by bill of information with armed robbery in violation of La.R.S. 14:64, and was convicted after trial by jury. He was subsequently sentenced to ninety-nine years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Defense counsel reserved and perfected nine bills of exceptions for appeal.
The facts of the case as they developed during the trial are as follows: The defendant entered the Katz and Besthoff drugstore at 812 Metaire Road, Metaire, Louisiana, on the night of September 23, 1973, at a few minutes before ten o'clock p.m. He was dressed in a security guard's uniform. He asked where he could find the toothpaste, purchased a few items, and then pulled a gun on the employees of the store, announcing that it was a "stickup". He ordered three on the employees to the back of the store, ordered another to give him the money in the safe, picked up several items, and exited the store. He was pursued by two police officers and arrested immediately thereafter.
Bill of Exceptions No. 1
Prior to trial, defense counsel moved for the appointment of a sanity commission to examine and report upon defendant's mental condition at the time of the alleged offense and to examine and report upon the defendant's capacity to proceed with the prosecution. The motion was granted and the court appointed two psychiatrists, Dr. A. J. Butterworth, and Dr. Gene Hill, to the commission.
Defense counsel then filed a second motion requesting that the psychiatric examination be conducted at Charity Hospital in New Orleans rather than at the State Penitentiary *632 at Angola. The motion was premised on the contention that an examination at Angola would be of too limited a nature to adequately reflect the defendant's true mental condition. It was argued that a complete psychiatric examination must include a thorough physical examination, including a blood test, urinalysis, a chest x-ray, an electroencephalogram, and other physical tests. This motion was subsequently withdrawn. The examination took place at Angola, and not all of these tests were performed.
Thereafter, a sanity hearing was held on December 12, 1973. After consideration of the testimony, the trial court ruled that the defendant had the capacity to understand the proceedings against him and to assist counsel in his defense and, accordingly, that he had the capacity to proceed with the prosecution.
Bill of Exceptions No. 1 was reserved to this ruling.
Counsel for the defendant now contends that some of the physical tests which were not performed, especially tests concerned with pulmonary functions, would have reflected the severe narcotic addiction of the defendant and would probably have affected the conclusions of the examining physicians. Defense counsel also alleges that the defendant suffers severe brain damage resulting from his addiction, and that no tests were conducted to determine this condition. On the basis of these objections, defendant urges that the sanity hearing conducted by the court be struck down and a more conclusive examination ordered.
Under the law it is presumed that every man is sane. The burden is on the accused to establish by a clear preponderance of the evidence that he lacks the capacity to understand the nature and object of the proceedings against him and to assist in conducting his defense in a rational manner. State v. Gray, 258 La. 852, 248 So.2d 313 (1971); State v. Edwards, 257 La. 707, 243 So.2d 806 (1971).
At the sanity hearing the only witnesses called were the two psychiatrists appointed by the trial court to examine the defendant. Dr. Butterworth testified that defendant was given routine laboratory tests, such as a blood test and a urinalysis, and that the results of the tests were well within normal limits. He further testified that psychological tests performed on the defendant did indicate some abnormalities, such as anti-social tendencies, mild hysteria, and possible schizophrenia. However, in Dr. Butterworth's opinion, these abnormalities were not mental diseases of such nature that they would render the defendant unable to assist in his defense or understand the proceedings against him. The doctor was aware of the defendant's prolonged addiction to heroin and his use of hallucinogenic drugs. However, he testified that while use of those drugs can cause memory lapses, he found no such memory lapses in the defendant. The defendant's I.Q. was not tested because it was found to be well within normal range, and such tests are only run when this is questionable. Dr. Butterworth found no evidence of any brain damage. Dr. Butterworth testified that he was satisfied that the tests he performed on the defendant gave a true indication of the defendant's capacity to proceed with the prosecution, and that in his opinion, the defendant was fully capable.
Dr. Hill assisted in the examinations, and his testimony fully corroborated that of Dr. Butterworth. In addition, Dr. Hill stated that he reviewed defendant's complete medical record prior to the interview and was aware that defendant had a history of bronchial asthma; consequently, he questioned defendant about this illness during the interview. Dr. Hill also stated that there was nothing to indicate that the defendant had organic brain damage which deprived him of the ability to react in a normal, socially acceptable manner. He agreed with Dr. Butterworth that defendant was able to proceed with the prosecution.
*633 In his per curiam, the trial judge states that the court was satisfied that although the defendant was not given every possible test, the tests he was given were sufficient to give an accurate indication of his mental capacity, and these tests reflected that his I.Q. was normal, that he had no memory lapses, and that there was no evidence of any brain damage. The court was further satisfied that the personality disorders manifested were so mild as not to constitute any hindrance to his ability to assist in his defense. The court noted that while the defendant's prior heavy use of drugs might be relevant to his ability to distinguish right from wrong at the time of the crime, it was not relevant to the issue of his ability to stand trial.
Article 644 of the Code of Criminal Procedure provides that: "When a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall consist of at least one and not more than three physicians who are licensed to practice medicine in Louisiana, and have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment. * * *" The Official Revision Comment under Article 644 states, in part, "(b) The type of examination and procedures to be followed will be determined by the sanity commission, subject to such general directions as the court may include in the order for examination."
In State v. Faciane, 233 La. 1028, 99 So.2d 333, 340 (1958), this Court held:
"There is nothing in the statute requiring that an accused be kept under constant observation for any fixed period of time, and the legislature has not therein attempted to dictate to these experts the manner and method to be employed by them in conducting their examination, undoubtedly feeling, as do we, that they are eminently better qualified to know just exactly how to best carry out their duty in this respect as the particular facts of each case may warrant."
The defendant was examined by two eminently qualified psychiatrists. Dr. Butterworth, a graduate of LSU Medical School, has been practicing medicine since 1942. He has broad experience in psychiatry, including twelve years in private practice, and eight years directing a police emergency psychiatric unit in New Orleans. He has been employed by the East Louisiana State Hospital since 1964 and at the time he examined defendant he was serving as Clinical Director of the hospital. Dr. Hill graduated from the University of Texas Medical School in 1949 and has been working in the field of psychiatry since 1950. He has been employed at East Louisiana State Hospital since 1966 and has served there as director of the Forensic Division.
Both physicians stated without reservation that in their opinion the defendant was able to proceed with the prosecution. Their opinions were reached after consideration of the defendant's physical and mental condition. Both psychiatrists were aware of the defendant's long-term addiction to heroin and his use of various other drugs; they were both aware of physical and behavioral problems associated with drug addiction. In their opinion, an electroencephalogram and a pulmonary function examination were not necessary. The defendant has presented no evidence to support his bare contention that such tests were indispensable.
We find no error in the trial court's ruling that the defendant was competent to stand trial.
Bill of Exceptions No. 2.
Bill of Exceptions No. 2 was reserved when the trial court denied the defendant's challenge for cause of a potential juror, Mr. Leslie L. England.[1] The motion *634 to excuse Mr. England was based on his answers to questions pertaining to his attitude toward narcotic addicts.
Defendant contends that the prospective juror's answers to questions on voir dire indicated that he harbored prejudices against narcotic addicts and was inclined to believe that they were less truthful than people who were not addicted. Such a juror would have been obnoxious to defendant as it was necessary for him to call three admitted addicts as witnesses.
The legal basis of defendant's challenge is Article 797, Subsection 4:
"... The defendant may challenge a juror for cause on the ground that: ... (4) the juror will not accept the law as given to him by the court."
There is no indication from this transcript that this juror would not accept the law as given to him by the court.
While Mr. England initially displayed some reluctance to believe the testimony of narcotic addicts after the law relative to the credibility of witnesses was explained to him, he indicated that he understood. And the judge on the basis of all of his testimony concluded that the juror was prepared to accept the law as given to him by the court for following the objection, the judge said "... the court has explained the law relative to the credibility of the witnesses to Mr. England and he has indicated that he understood and that he would abide by it."
This bill has no merit.
Bill of Exceptions No. 3
Bill of Exceptions No. 3 was reserved when the trial judge refused to grant defendant's motion to set aside the entire petit jury venire. Defendant's motion was based on several grounds. The first was that there was a systematic exclusion of blacks from the jury. The only proof offered by defendant was that there was only one black on the jury panel, suggesting that the panel was composed of less than 2% blacks, although the population of Jefferson Parish exceeds 12% blacks.
In State v. Watson, 301 So.2d 653 (La. 1974), which presented a similar contention, we held:
"... The defendant must make a prima facie showing the Negroes were systematically excluded from the jury. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). However, mathematical standards are not the determinative factor. The facts of each case must be examined to determine whether systematic exclusion has occurred.
* * * * * *
"The defense offered no evidence which showed that there was a systematic exclusion. The stipulated evidence shows that the composition of the jury venires was not in proportion to the general population of the parish. However, absent a showing of a selection system that was not racially neutral this court cannot find that the defendant has established a prima facie case on this point."
The defendant in the instant case, as noted above, relied solely upon a mathematical argument. This was not sufficient to establish a prima facie showing of systematic exclusion.
Defendant also alleges that the systematic and intentional exclusion of women from the jury panel warrants a dismissal of the indictment. The U. S. Supreme Court held invalid the Louisiana provisions excluding women from jury service unless they specifically volunteered in Taylor v. State of Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). However, in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. *635 704, 42 L.Ed.2d 790 (1975), the U. S. Supreme Court held that the Taylor rule was to operate prospectively only. This Court applied the Daniel holding in State v. Rester, 309 So.2d 321 (La.1975). Defendant was tried on January 29 and 30, 1974. Therefore, under the holdings of Daniel and Rester, this contention is without merit.
The defendant also contends that the petit jury venire should be set aside because half of those called were not present in court, and the trial should have been continued until attachments for those prospective jurors were answered. The record reflects that the defendant did not object to the absence of some of the jurors until after the entire jury had been empanelled. He offered no proof of prejudice to him because some of the jurors were absent. In State v. Witherspoon, 292 So.2d 499 (La.1974), this Court held that although the trial court may attach absent veniremen under C.Cr.P. art. 783, it is not required to delay proceedings to do so, in the absence of material prejudice to the accused. Consequently, this contention is without merit.
Bill of Exceptions No. 4
The defendant reserved Bill of Exceptions No. 4 to the trial court's ruling denying the defense counsel's objection to a question asked by the prosecution of a State witness, one Hazel DeMarigny. The basis of the objection was that the question was allegedly repetitious. As pointed out by both the defense and the prosecution, an important issue in the trial was the defendant's alleged insanity on the night in question. The questions posed to witness DeMarigny by the State were intended to establish the defendant's condition as "normal" on that night. The specific question objected to was: "Can you give us a description of the defendant's appearance that night?" The previous questions had been about appearance as well, but had been directed more to the issue of what the defendant had been wearing, his physical appearance. What was sought in this instance by way of a response was a subjective statement of how the defendant appeared to the witness; the response was that he appeared normal. After this answer, the court instructed the prosecution to proceed to something else.
Defense counsel argues that the repetition of the questions made more obvious to the jury the manner in which the defendant acted on the night of the robbery, and the emphasis was prejudicial to the defendant. A review of the record containing the full questioning of this witness demonstrates that the question and the answer elicited were not in fact repetitious and the trial court did not err in overruling the objection.
This bill is without merit.
Bills of Exceptions Nos. 5 and 6.
These bills were reserved to the ruling of the trial judge admitting into evidence certain items. The basis of the objections was that a proper chain of custody of the evidence had not been established. The evidence objected to consisted of a purple K & B jacket, a pair of gray trousers and a gray shirt which were part of a security guard's uniform of the type allegedly worn by the defendant, and a "Garrison" hat, also allegedly worn by the defendant.
Defendant argues that some of the witnesses could not positively identify the items as being the actual items worn by the defendant on the night of the robbery, and that therefore the State did not establish a proper unbroken chain of evidence.
The fact that some of the witnesses failed to positively identify the evidence does not detract from the fact that the chain of custody was properly established. There was adequate testimony that Officer Meehan, the first officer on the scene, took the clothing which the defendant was wearing at the time of the arrest. Officer Meehan took the clothes at the First District *636 lockup, and there turned them over to Technician Cochran. Officer Meehan identified the clothes as those he took from the defendant. Technician Cochran, a Crime Scene Technician from the Jefferson Parish Sheriff's Office, testified that he collected the clothes from Officer Meehan, which he then delivered to Mr. Arthur Fields, Evidence Clerk for the Clerk of Court of Jefferson Parish. No one else had access to the evidence. The box containing the clothing was opened on only one occasion, at a prior court proceeding, while it was in Mr. Field's possession. Mr. Field then resealed the box himself.
These bills are without merit.
Bill of Exceptions No. 7.
This bill was reserved to the court's denial of defense counsel's request for a special jury charge on intoxicated or drugged condition as a defense.
Article 807, Louisiana Code of Criminal Procedure, provides:
"The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
The court's general charge included the provisions on insanity in La.R.S. 14:14 and those on intoxication in La.R.S. 14:15; therefore, it was unnecessary to include the special charges on these defenses since the general charge adequately covered them. Moreover, as pointed out in the trial judge's per curiam, the special charges submitted were not an accurate statement of the law.
This bill has no merit.
Bill of Exceptions No. 8.
This bill was reserved to the court's denial of defendant's request to have a special charge on presumption of innocence inserted in the general charge. A review of the general charge shows that this matter was completely and adequately covered in the court's general charge, and therefore properly refused under La.C.Cr.P. Art. 807, supra.
This bill is without merit.
Bill of Exceptions No. 9.
This bill was reserved to the court's refusal of defendant's request to have inserted in the general jury charge a special charge on unanimous verdicts. The charge which defense counsel wanted was that a unanimous verdict was necessary to convict. However, Article 7, § 41 of the Louisiana Constitution of 1921 provided that where punishment is at hard labor, as it is with armed robbery, a jury of twelve is required, only nine of whom must concur in a guilty verdict.[2] This provision has been incorporated in the Code of Criminal Procedure as Article 782. Therefore the requested charge was incorrect and properly excluded under La.C.Cr.P. Art. 807, supra. The provision in Article 782 for a less than unanimous jury verdict was upheld as constitutional in Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).
This bill has no merit.
The defendant's conviction and sentence are affirmed.
NOTES
[1] While this juror did not ultimately serve because later challenged peremptorily by the defendant, the issue of the propriety of the court's ruling on this defense challenge is nonetheless still before us because defendant exhausted all of his peremptory challenges. See State v. Oliphant, 220 La. 489, 56 So.2d 846 (1952).
[2] Article 1, section 17 of the Louisiana Constitution of 1974, effective January 1, 1975, has retained the use of less than unanimous verdicts, and in cases in which the punishment is necessarily confinement at hard labor, provides for trial before a jury of twelve persons, ten of whom must concur to render a verdict.