344 So.2d 1006 (1977)
STATE of Louisiana
v.
Albert STUART.
No. 58780.
Supreme Court of Louisiana.
April 11, 1977.
*1007 Wilson C. Krebs, Patterson, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Bernard E. Boudreaux, Jr., Edward M. Leonard, Jr., Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Albert Stuart was charged by bill of information with armed robbery of a bank teller in Amelia, Louisiana on December 19, 1975. He was tried by jury, found guilty as charged, and sentenced to serve a period of fifty-five years at hard labor without benefit of probation, parole or suspension of sentence. In this appeal of his conviction and sentence he argues the merit of three assignments of error.

ASSIGNMENT OF ERROR NO. 1.
He complains that the trial court erred in denying his request to have an independent mental examination made by a physician of his choice at state expense. He contends that this request is justified because no psychiatrist was appointed to the sanity commission, no psychiatric or other tests were administered to him, and neither of the two physicians on the commission was made aware of the details of the crime before his examination of defendant.
Defense counsel raised this issue by motion in which he requested that a sanity commission be appointed to examine the defendant and that, following that examination, he be examined at the forensic unit at East Louisiana State Hospital. A sanity commission was appointed in which Dr. Harvey Sykes, Jr., Assistant Coroner of St. Mary Parish, and Dr. L. J. Dugas served. At the hearing following their examination of defendant, Dr. Sykes, who has been a physician for twelve years and assistant coroner for five years, testified that he had examined defendant Stuart and had decided that Stuart did understand why he was in jail and that he was able to grasp the charges against him and their consequences. The doctor further testified that he found nothing at all to indicate that defendant was incapable of standing trial or assisting his counsel at the trial. He admitted that his examination of defendant was very short, only fifteen minutes, that he administered no psychological or other tests, that he did not know the details of the armed robbery defendant was accused of committing, *1008 and that he had been exposed to specialized training in psychiatry for only four months during his medical training. Dr. Dugas testified that he had been in the general practice of medicine for twenty-one years and, although he did treat patients for psychiatric disorders, had no special training in psychiatry as such. He stated that he had examined defendant for approximately half an hour. No tests were given, but rather the doctor discussed the defendant's past life and examined him as to his orientation as to time, place and events which he concluded to be normal. The doctor indicated that he did not think that more time for in-depth analysis of the defendant would change his opinion that the defendant was capable of assisting in his defense.
Following examination of the two doctors, defense counsel opined that his inability to have his client, who was accused of committing a very serious crime, examined by a board-certified psychiatrist was "harmful to the constitutional rights of the defendant." No medical or lay testimony of any nature was offered by defendant. No claim was made by defense counsel that he had not been allowed to have his client examined at his own expense by a physician of his choice. C.Cr.P. art. 646. In fact, defense counsel did not ever specifically request that defendant be examined by a psychiatrist or by a physician of his choice at state expense. However, we find that counsel's desire, which is made explicit in his assignment of error and his argument to the Court, was probably apparent to the trial court because of his references, to the forensic unit at the state hospital and his stated need to have a board-certified psychiatrist examine his client in order to protect his constitutional rights. C.Cr.P. art. 841; State v. Ervin, 340 So.2d 1379 (La. 1976).
Article 644 of the Code of Criminal Procedure provides that the sanity commission:
"shall consist of at least two and not more than three physicians who are licensed to practice medicine in Louisiana, and have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment. No more than one member of the commission shall be the coroner or any one of his deputies."
The statute does not require that any of the physicians appointed be psychiatrists. Furthermore, selection of qualified physicians to serve on a sanity commission rests within the sound discretion of the trial judge. State v. Vince, 305 So.2d 916 (La.1974); State v. Gray, 258 La. 852, 248 So.2d 313 (1971). Although a judge's decision not to appoint psychiatrists to a commission could conceivably be an abuse of discretion in a particular case where psychiatrists were available to serve on a commission and there was a stronger showing that a person accused of a serious crime was suffering from a mental defect, there certainly was no such abuse in this case where there was no showing by testimony, affidavit, or even by allegation, that defendant was suffering or ever had suffered from any sort of mental or emotional disorder. Furthermore, there is no complaint here that the judge abused his discretion.
Defense counsel relies in part on Article 646 of the Code which provides that the "court order for a mental examination shall not deprive the defendant . . . of the right to an independent mental examination by a physician of his choice." This article does not presently afford a defendant the right to have the state pay for an independent psychiatric examination. State v. Thomas, 310 So.2d 517 (La.1975); State v. Gray, supra; State v. Square, 257 La. 743, 244 So.2d 200 (1971). Although this Court is aware of the expanding rights of indigent defendants, we are not prepared to say that our present statutory procedures are constitutionally deficient.
Accordingly, we find that this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 2 and 3.
In these assignments, defendant Stuart complains that the trial court erred in admitting *1009 into evidence a copy of a "bait list" which was used to link the money stolen from the bank to the defendant. He argues that the admission violated the best evidence rule (assignment number two) and the hearsay rule (assignment number three), and that the introduction was made without the laying of a proper foundation (assignment number three). A bait list is a list of serial numbers maintained by a bank reflecting the serial numbers on some of the currency in its coffers. The list is kept up to date so as to identify money taken from that particular bank in case of a robbery. The head teller at the Guaranty Bank & Trust Company, Lillian Rhibardi, identified the list as a xeroxed copy of one she had personally made out in her own handwriting. She examined the document in court and testified that the original had indeed been made out by her. Douglas Knight of the F.B.I. testified that he had obtained the list from Gerald Listi of the Guaranty Bank and had used the list to correlate the currency recovered from the defendant with the bills taken from the bank. He identified the list present in the courtroom as a copy of the original bait list which had been supplied to him by the bank. The original list was apparently never in the courtroom during the trial and was not introduced into evidence.
At the time the state sought to introduce the bait list into evidence, defense counsel objected on the grounds that it was a copy and not the original. The objection was overruled and the bait list was introduced into evidence.
Louisiana Revised Statute 15:436 provides that "The best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced." This rule, however, is limited by decisions of this Court which hold that where a document offered in evidence is a mechanical reproduction of the original, and is thus the substantial equivalent of the original, admission over objection is reversible error only upon a showing that the content of the purported copy does not accurately reflect that of the original. State v. Vincent, 338 So.2d 1376 (La.1976); State v. Jackson, 296 So.2d 320 (La.1974). Although defense counsel had ample opportunity to cross-examine both witnesses as to any alterations in the photostatic copy, he made no such showing. Thus, the admission of the document does not violate the best evidence rule.
Defendant further argues that the bait list was inadmissible as hearsay. R.S. 15:434. No objection on the grounds of hearsay was ever made by defense counsel as to the introduction of this list. Therefore, the argument is not properly before the Court. C.Cr.P. art. 841; see State v. Dupre, 339 So.2d 10 (La.1976). Even were we to consider this argument we would find no merit in it because the person who made out the list, Ms. Lillian Rhibardi, did testify and was cross-examined at the trial and was available for further cross-examination had counsel wished to question her further. The introduction of the list under these circumstances was proper.
Finally, defendant argues that no proper foundation was established for the admission of the evidence because the state did not show a chain of evidence in connection with the list. As we stated in State v. Dotson, 260 La. 471, 256 So.2d 594, 608 (1971), we held:
"To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence."
Here, the bait list was visually identified by Ms. Rhibardi, the person who made out the original list in her own handwriting. She testified that the document introduced was a copy of the original she had made as a part of the business records kept in the bank on the day of the robbery. Her identification of the document establishes that the document was reasonably connected with the offense and that it had some relevancy *1010 in connecting the money taken from the bank with the money found in possession of the defendant.
Therefore, the trial judge did not err in his decision that the bait list in question was admissible at defendant's trial, and assignments two and three lack merit.
Accordingly, for these reasons defendant's conviction and sentence are affirmed.
DENNIS, J., dissents.