427 So.2d 1346 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Earl McDOWELL, Defendant-Appellant.
No. 15218-KA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1983.
*1347 Donald R. Minor, Frances Baker Jack, Asst. Indigent Defenders, Shreveport, for defendant-appellant.
Terry L. Lindsey, Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for plaintiffappellee.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
The 26-year-old defendant was convicted of simple rape of a 71-year-old senile victim in her home and was sentenced to 20 years at hard labor. LRS 14:43(2). In this appeal of his sentence and conviction, he assigns seven errors. We affirm.
The facts which most favorably support the jury verdict included testimony from the victim's grown son who lived near his mother and routinely visited her. After dark on the day of the crime, the son found his mother's front door locked and saw no light in the front room of the house. He knocked several times on the door, called for his mother, and heard only a mumbled response. Becoming excited about her well-being, he "burst in" and found his mother lying on the couch, crying, trying to get up, with blood all over her slip. The defendant was standing by the couch, his jeans halfway to his knees, bloody from the waist down and on his clothes. The son's anger and reaction to what he saw caused defendant to say to him more than once, "Be cool, man, be cool ..."
Apparently attracted by the son's efforts to gain entry into the house, other persons came to the scene. The son and another man grabbed defendant while the son continued to verbally and physically assail defendant, "Why have you done this to my mom?", with defendant answering, "Be cool." A niece of the victim, at the scene, and later a medical doctor at a hospital, testified that the victim was bleeding profusely from her vagina. The medical doctor testified that the vaginal wall of the victim was lacerated, apparently from violent or forceful sexual activity, and that the victim would have been caused some pain. The quantity of blood was depicted in photographs of the scene. Defendant did not deny the intercourse but contends that the victim consented and "liked it". The victim was senile and was not called to testify.
*1348 Defendant's assignments of error include his mental capacity [to proceed], jury instructions, his sentence, and the victim's unsoundness of mind, which is an element of the crime of simple rape.[1]
At defendant's request, a sanity commission was appointed to determine defendant's mental capacity to proceed. CCrP 644. Defendant has the burden of proving his incapacity to either understand the proceedings against him or assist in his defense because of a mental disease or defect. CCrP 641-649. State v. Hamilton, 373 So.2d 179 (La.1979). Defendant was shown to be below normal in intelligence and a borderline psychotic, he was found to be functioning rationally when interviewed, and to have an understanding of the proceedings and their possible consequences. The essence of defendant's contention is that the trial court, acknowledging that stress could possibly cause defendant to slip into a psychotic state, erred by not ordering further testing of defendant and in finding that defendant had the capacity to proceed. The testimony of the sanity commission fully supports the finding. The trial court instructed defendant's counsel that if defendant's capacity did change during the course of the proceedings another incapacity motion could be filed. No other incapacity motion was filed. We find no error. See CCrP 652. State v. Gray, 258 La. 852, 248 So.2d 313 (1971).

ASSIGNMENT NO. 2
Defendant originally pleaded not guilty and not guilty by reason of insanity. He later withdrew that plea and pleaded not guilty. The sanity commission examined defendant only to determine his capacity to proceed. Defendant contends that his subnormal intelligence and borderline psychosis render his oral inculpatory (and exculpatory) admissions to the police not freely and voluntarily made and thus inadmissible. LRS 15:451. CCrP 703(C). State v. Glover, 343 So.2d 118 (La.1977).
Defendant was taken by the police to the hospital for medical attention to the injuries inflicted on him by the victim's son. His statements there and at the victim's home were not the result of police interrogation but were spontaneous. While one policeman mentioned that the defendant appeared "unstable" and another characterized his statements as "rantings and ravings", these statements were well oriented to the circumstances, were spontaneous, explanatory, and exculpatory in part.[2]
Considering the circumstances presented and the presumption of LRS 15:432, the state made a prima facie showing that the statements were freely and voluntarily made. This showing was not overcome by defendant. State v. Glover, supra. We find no error in this assignment.

ASSIGNMENTS 5, 7 AND 9
These assignments relate to defendant's requested jury instructions and stem in part from the victim's mental capacity and the explanation given by witnesses why she did not testify before the jury.
A requested special charge shall be given if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. This language of CCrP 807 is conjunctive.
The general instructions suggested that the jurors were to use their reason and common sense in resolving factual issues and that they were required to give the *1349 defendant the benefit of every reasonable doubt arising out of the evidence or the lack of evidence. The jurors were also told of the LRS 15:432 presumption that "evidence under the control of a party and not produced by him was not produced because it would not have aided him." The defendant's sanity at the time of the commission of the offense was not at issue and the jury was intentionally not instructed on the presumption in the same statute that the "defendant is [presumed] sane ..."
Two of the three requested jury charges[3] relate to the fact that the victim was not called as a witness and did not take the witness stand. The jury was instructed that the elements of the crime included the state of mind of the victim, the "knowledge" of defendant of the victim's incapacity, and that the state was required to prove every element beyond a reasonable doubt. Under the circumstances, it was not reversible error for the trial court to refuse the charge that every person is presumed to be sane and of sound mind. Defendant's state of mind (his "knowledge", actual or constructive, of the victim's incapacity) is one of the elements of the crime and the jury was not instructed on the presumption of his sanity under LRS 15:432 but instead were generally instructed to rely on their reason and common sense in determining whether this element was proved beyond a reasonable doubt.
Similarly, the failure of the trial court to instruct that "understanding and not age must determine whether any person tendered as a witness shall be sworn" was not error. This is the rule of LRS 15:469 which is the test of competency of a witness under 12 years of age. Understanding is also the test for any other witness under LRS 15:461. The defendant contends that the requested charge should have been given in conjunction with the charge on the presumption of LRS 15:432 that evidence under the control of a party and not produced by him was not produced because it would not have aided him, because the state had argued to the jury the term "competency" as used in the LRS 15:461 provision. This remark was made in the state's rebuttal and only after defendant argued the question of the victim's reliability and her absence from the witness stand.
Whether a person is competent to testify as a witness in a criminal trial is a determination that is relegated by the statutes to the judge and not to the jury. The failure of the state to call the victim as a witness relates not to the competency of the victim as a witness, but to the state's burden of proof, the presumption arising from the failure, and the jury's privilege of finding reasonable doubt from the lack of evidence. The LRS 15:469 requested charge regarding the competency of a witness was properly denied.
When viewed in the abstract, the other charge denied ("that it is not illegal for unmarried adults to engage in consensual sexual intercourse regardless of their ages") is not wholly incorrect, but, under the circumstances of this case, this charge would have required some explanation. CCrP 807. The state of mind of the victim (her incapacity through unsoundness of mind) and the state of mind of the defendant (his knowledge, either actual or constructive, of this incapacity) are elements of the crime charged. LRS 14:43(2). The jury is directed to determine whether these or any elements have been proved beyond a reasonable doubt by considering all of the circumstances presented to them, exercising logic, reason, and common sense. If the requested charge had been given it would have been necessary to explain that disparity of age was a circumstance which the jury could consider in determining the issues, even though disparity of age alone does not prove the crime charged. It was not error to deny this requested charge.

ASSIGNMENT NO. 10
The last assignment relating to defendant's conviction requires our consideration *1350 of the Jackson v. Virginia standard,[4] whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. We answer in the affirmative and find no error in this assignment.
Simple rape is a rape that is committed where the vaginal intercourse is deemed to be without the lawful consent of the victim because it is committed in circumstances where the victim is incapable, through unsoundness of mind, of understanding the nature of the act. See LRS 14:43(2) quoted in footnote one. While it is customary in legal analysis to consider each word of a statute separately, the phrase "incapable, through unsoundness of mind, of understanding the nature of the act", it is a phrase that derived from the common law crime of rape that has acquired definite meaning. The phrase is not otherwise defined in the Louisiana Criminal Code.
We may look to the historical and traditional derivation of a term or phrase where the criminal code has retained the common law concept and terminology and has not otherwise defined the crime to the contrary. See State v. Gyles, 313 So.2d 799 (La.1975), LRS 14:2(7) since Act 256 of 1976, and State v. Brown, 378 So.2d 916 (La. 1980). Where the criminal code clearly defines a crime in terms and a concept other than as defined in the common law, Art. 7 of the criminal code will control. State v. Pierre, 320 So.2d 185 (La.1975).
In rape cases in the common law states, the fundamental question, "either with or without the statute [of the type used in the Louisiana Criminal Code or the Model Penal Code], is whether or not the mental condition of the female is so impaired that legal consent cannot be exercised or given.... [A] fair analysis of the cases which have treated this question and sound reason lead to the conclusion that consent which will be held sufficient assumes a mental capacity in the person consenting to the extent that she understands and appreciates the nature of the act of sexual intercourse, its character and the probable and natural consequences which may attend it. Bracketed comments and emphasis supplied. Stephenson v. State, 35 Ala.App. 379, 48 So.2d 255, 258 (Ala.App.1950). See also State v. Sullivan, 298 N.W.2d 267 (Iowa 1980); Smith v. State, 345 So.2d 325 (Ala.Cr.App.1976); People v. Boggs, 107 Cal.App. 492, 290 P. 618 (Cal.Dist.Ct.App.1930). Compare People v. Blunt, 65 Ill.App.2d 268, 212 N.E.2d 719 (Ill.App.1965); Harris v. State, 474 S.W.2d 706 (Tex.Cr.App.1972).
Medical and lay witnesses testified about the victim's mentality. This victim has had "serious organic brain disease" since 1978 which grossly impairs her ability to concentrate, to exercise good judgment, to remember, to think abstractedly, and to foresee consequences. Her speech is illogical and she is disoriented. When interviewed by the psychiatrist in 1982 following the rape, she thought that the year was in the 1930's, that John F. Kennedy was President of the United States, and that her deceased mother was still alive. She did not know her initials or what they stood for. She cannot perform normal functions such as bathing and dressing herself and does not recognize her children and neighbors. Among family and friends she has the reputation of having to be "looked after", and of having a mind that is "not right". Her mental deficiencies are broadly attributed to senility or senile dementia.
Defendant argues that the Jackson v. Virginia standard is not met because one of the state's medical witnesses testified on cross examination that because the victim had been married and had children she understood the nature of the act of sexual intercourse. We do not agree. The doctor's answers to whether the victim, with the organic brain disease, would understand on the date of the crime the nature of the act of sexual intercourse, were explained as follows:
"I think that [she] still preserved enough of her remote memory to have known what intercourse was ... she married and had four children ... I'm sure she would understand what intercourse *1351 meant. * * * I think she would have reasonable concept of [functions such as human sexuality]
* * * * * *
"I have no way of being able to state ... one way or the other [whether on the date of the crime she was unable to understand the nature of an act of sexual intercourse]. All I can say is ... I would presume that [on the date of the crime] she had significant organic brain disease. * * *"
When we consider the totality of the evidence from lay and medical witnesses in the light of all of the other circumstances, there is an overwhelming quantity of evidence from which the jury could have deduced that the victim, because of her unsoundness of mind, was incapable of understanding the nature of the act. A rational trier of fact could have found this defendant guilty beyond a reasonable doubt.
The defendant admitted the intercourse and expert testimony and tests verified it. The victim did not respond to questions by the police during the investigation, but this fact supports the proof of the element that the victim was of unsound mind on that day and was incapable of understanding the nature of the act. Notwithstanding that the victim obviously experienced intercourse and knew what it meant as a married woman and mother of children, the victim was incapable of understanding the nature of the act because her judgment and her ability to foresee consequences was grossly impaired by organic brain disease. In any event the jury may accept or reject in whole or in part the testimony of any witness and may decide the facts and the law. Where the jury's determination of whether the elements of a crime have been proved beyond a reasonable doubt is support by a quantity of evidence such as we have summarized, we shall uphold that jury's verdict under the Jackson v. Virginia standard.
Defendant also argues that the standard was not met as to defendant's knowledge, actual or constructive, of the victim's unsoundness of mind. Again we cannot agree. A police detective who investigated at the scene testified that the victim was not responsive to his questions and did not adequately answer his inquiries. Others at the scene generally corroborated this statement. If the victim was unresponsive to the inquiries of others after the intercourse, is it logical, reasonable, and in the realm of common sense to conclude, in the light of the other testimony about the victim's mentality, that she was unresponsive to the defendant's inquiries before the intercourse? While the defendant is of subnormal intelligence, he obviously has had dealings with people of average intelligence. And while defendant is not shown to have been a friend of the elderly victim, he admits that he knew her as a neighbor. We answer affirmatively and find that a rational trier of fact could have concluded beyond a reasonable doubt that defendant should have known of the victim's unsoundness of mind. We shall affirm defendant's conviction.

ASSIGNMENT NO. 11
In the final assignment defendant complains that his sentence to 20 years at hard labor is constitutionally excessive. LSA-Const. Art. 1, § 20. The maximum sentence for simple rape is 25 years. The trial court adequately complied with CCrP 894.1 and expressly stated the factual basis for the sentence and one of the 11 mitigating circumstances he found present. Defendant had prior convictions of simple battery and aggravated arson. The facts surrounding the simple battery indicated that defendant was attempting to commit rape in that situation. Defendant is not eligible for a suspended sentence.
The trial court expressly considered the extreme physical injury inflicted on this elderly victim and the need to place this defendant in a custodial environment in view of his (mitigating) emotional problems. The trial court further noted that the defendant's attitude during the investigation and the trial indicated the likelihood that the defendant would commit another crime if released. The sentence of 20 years *1352 at hard labor is fully supported and articulated and is not excessive.
Conviction and sentence AFFIRMED.
NOTES
[1] LRS 14:43(2) reads:

"Simple rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances: * * *
"2) Where the victim is incapable, through unsoundness of mind, whether temporary or permanent, of understanding the nature of the act; and the offender knew or should have known of the victim's incapacity; ..."
[2] At the victim's home, the defendant repeatedly told the victim's son to "be cool." At the hospital, the defendant told police officers that he had had intercourse with the "old lady" and that "the old lady wanted him" and that he "couldn't help it if she wanted a younger man like him".
[3] The two requested charges were:

(1) The law presumes every person to be sane and of sound mind; and
(2) Understanding, and not age, must determine whether any person tendered as a witness shall be sworn.
[4] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).